In the Matter of the Application of CATHERINE F. MAHON, Appellant, for a Writ of Mandamus against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

CONSTITUTIONAL LAW — NEW YORK CITY — LAWS OF 1900, CH. 725, CONFERRING PENSIONS UPON TEACHERS WHO RETIRED BEFORE ESTABLISHMENT OF PENSION SYSTEM UNCONSTITUTIONAL. Chapter 725 of the Laws of 1900, directing the board of education of the city of New York to place certain persons who had been retired as teachers before the establishment of the pension system by chapter 296 of the Laws of 1894, on the list of retired teachers entitled to receive as annuities one-half the salaries paid to them while in service, and to pay to them such annuities from the time of their respective retirements, not earlier than the enactment of the statute of 1894, is unconstitutional so far as it relates to teachers who retired before the enactment of that statute, it being an appropriation of city moneys to persons who had been employees at a time when no pension system was provided by law which must be regarded as a gratuity or extra compensation to a public servant, and is, therefore, within the prohibition of section 28 of article 3 of the Constitution.

*Matter of Mahon* v. *Bd. of Education*, 68 App. Div. 154, affirmed.

(Argued May 5, 1902 ; decided May 20, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 12, 1902, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus directing the defendant to place the name of the relator on the list of retired teachers entitled to receive as an annuity one-half of salary paid her before retirement, and dismissed the proceeding.

The facts, so far as material, are stated in the opinion.

*Jacob F. Miller* and *Charles A. Decker* for appellant. No issue of fact is raised by the return. Allegations on information and belief are not sufficient denials in cases of mandamus. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 187 ; *People* v. *City of Brooklyn*, 77 N. Y. 503.) Every presumption is in favor of the constitutionality of the acts of the legislature. An adverse doubtful construction is not sufficient to condemn

an act. (55 N. Y. 54; 50 N. Y. 553; 14 Mass. 340; 17 N. Y. 235; 23 Wend. 166; *Matter of G. E. R. R. Co.,* 70 N. Y. 367.) The money to be paid to annuitants present and prospective is not a salary, a gift or extra compensation. (*Trustees, etc.,* v. *Roome,* 93 N. Y. 313.) The act under consideration was a recognition of meritorious services rendered the municipality which the legislature in its wisdom converted from a moral obligation into a legal liability. The act is a public act because it is addressed to an arm of the state government and not to an individual. (*Mayor, etc.,* v. *Furze,* 3 Hill, 612; *People* v. *Bd. Suprs.,* 51 N. Y. 406; *People* v. *Davenport,* 91 N. Y. 585; *People* v. *McGloin,* 91 N. Y. 250; *Dorousseau* v. *U. S.,* 6 Cranch, 314, 323; *Martin* v. *Mayor, etc.,* 1 Hill, 545; *People* v. *Cook,* 14 Barb. 290; 8 N. Y. 67; *People* v. *Schermerhorn,* 19 Barb. 58; *Hutson* v. *Mayor, etc.,* 9 N. Y. 169; *Livingston* v. *Tanner,* 14 N. Y. 67.) The act is so complete in all its provisions that nothing judicial is required from the board of education; it has no discretion to exercise. (*People* v. *Comrs., etc.,* 149 N. Y. 26.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* of counsel), for respondent. The act is unconstitutional. (*Trustees, etc.,* v. *Roome,* 93 N. Y. 313; *Fox* v. *M. & H. R. H. Society,* 165 N. Y. 517; *Pennie* v. *Reis,* 132 U. S. 464; *Frisbee* v. *U. S.,* 157 U. S. 160; *Matter of Straus,* 44 App. Div. 425; *Matter of Jensen,* 44 App. Div. 509; *Matter of Chapman,* 57 App. Div. 583; 168 N. Y. 80.)

CULLEN, J. By chapter 296 of the Laws of 1894 there was enacted a provision for retiring and pensioning on half pay male teachers in the city of New York who had served thirty-five years, and female teachers in that city who had served for thirty years. The fund for the payment of these pensions was to consist of fines and deductions from teachers' wages made for any cause and from donations or legacies that might be made to it. Chapter 91 of the Laws of 1898 added to the fund five per cent of the excise money

or license fee belonging to the city of New York. The relator had been a teacher in a public school in the city of New York, from which position she retired in September, 1892. In 1900 an act was passed (Chap. 725, laws of that year) by which the board of education of the city was directed to place the relator and thirty-two other teachers, who had also been retired before the establishment of the pension system, on the list of retired teachers entitled to receive as annuities one-half the salaries paid to them while in service, and to pay to them such annuities from the time of their respective retirements not earlier than the enactment of the statute of 1894. The respondent having declined to place the relator's name on the list, this proceeding was instituted to compel it to take such action.

We agree with the learned Appellate Division in the view that the statute of 1900 is unconstitutional and approve the able opinion delivered by that learned court. That the excise money appropriated to the pension fund is public money is plain. (*People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Fox* v. *Mohawk & H. R. Humane Society,* 165 N. Y. 517.) I think it is equally plain that the proceeds of the fines and deductions from teachers' wages are also public moneys. (*Pennie* v. *Reis,* 132 U. S. 464.) They certainly were the moneys of the city of New York before they were appropriated to the payment of teachers' wages, and when that appropriation failed because through misconduct or absence the teachers were no longer entitled to receive them, they necessarily remained the property of the city. I do not see, however, how a contrary view would help the relator. If they are to be regarded as belonging to the teachers the legislature could not alter the purpose towards which they were originally devoted. Being the moneys of the city of New York, the question is presented whether the legislature could lawfully appropriate them for pensions to persons who had been employees of the city at a time when no pension system was provided by law.

We think not. In *Town of Guilford* v. *Supervisors of*

*Chenango County* (13 N. Y. 143) the broad doctrine was laid down that "The Legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well being requires or will be promoted by it, and it is the judge of what is for the public good." This remained the law till 1875, when the people thought it necessary to impose restrictions, which was done by the constitutional amendments adopted in that year. Section 10 of article 8 provides that "No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation," and section 28 of article 3, "The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor." These amendments eliminated all considerations of gratitude and charity as grounds for the appropriation of public moneys, except so far as by article 8 it is provided that these restrictions shall not prevent the municipalities named from making such provision for the aid and support of their poor as may be authorized by law. The claim of the relator falls in direct terms within the restrictions of section 28 of article 3. The relator was a public servant or employee of the city and the legislature has sought to grant her extra compensation. The argument of her counsel only emphasizes the conflict between the statute and the Constitution. He contends: "The act of 1900 is as though the State said to the worn-out and decrepit teachers, 'You have not been paid enough for your services, and we will now pay you what you deserve.'" It is exactly such action on the part of the legislature that the constitutional amendment was intended to prevent. Extra compensation is compensation over and above that fixed by contract or by law when the

services were rendered. No one would assert that as between private individuals there arises any equitable or moral obligation to pay for services more than the stipulated compensation, where no services have been rendered additional to those contemplated by the contract. There was no moral obligation on the city of New York to establish a pension system in favor of teachers. Most of the servants of the state and most of the teachers in public schools enjoy no right to be pensioned for services. The question of establishing a system of pensions is one of policy, not of obligation. The legislature might well think that in a large city where teaching is adopted as a calling to be pursued for years, and often for life, it would be wise to provide a system of pensions as an inducement both to service at low wages and also to good conduct in service. But these considerations have no application to the case of officers or employees who are not in service at the time the pension system is established or in force. As to such persons the grant of a pension is a mere gratuity.

Neither the case of *Cole* v. *State of New York* (102 N. Y. 48) nor that of *Wrought Iron Bridge Co.* v. *Town of Attica* (119 N. Y. 204) is authority to the contrary. In the first case the legislature had provided for the compensation of the port warden and harbor masters of the port of New York by fees imposed on the shipping berthed at the wharves in said port. It was held by the Supreme Court of the United States that the state had no power to impose this tax on the vessels, and the provision for the payment of these officers, therefore, fell. A statute was then passed which authorized the Board of Claims to hear and determine the claim of the relator for his services as harbor master. The statute was held valid and the doctrine of the decision, so far as material to the present case, is this : " It grants no extra compensation. It merely gives jurisdiction to hear and determine a claim for reasonable compensation for services rendered in a case where the compensation attempted to be provided by law failed by reason of the invalidity under the Constitution of the United States of the provision for such compensation, and the claimants had conse-

quently rendered beneficial services, accepted and ratified by the legislature, without any valid provision for their compensation." Here the services of the relator were rendered under a valid provision for compensation, which was carried out. In the second case the plaintiff had built a bridge under a contract with the highway commissioners of the town for which the town voted to pay. The proceedings which led up to the execution of the contract were defective, and for this reason the plaintiff failed in an action brought against the town to recover the contract price. Subsequently a statute was passed ratifying the proceedings of the town officers, and thereupon a new action was brought in which the plaintiff recovered and the recovery was affirmed by this court. This decision proceeded on the ground that the legislature had the power to legalize the defective proceedings of the town authorities, upon the faith of which the plaintiff had built the bridge, the benefits of which the town had received and continued to enjoy. Had it been an action against a private individual instead of against a municipal corporation, the acceptance of the work would have rendered the defendant liable even though his agent had had no authority to contract for its performance, and, therefore, there was resting on the town a clear, equitable obligation to pay for the bridge. But in *Matter of Greene* (166 N. Y. 485) the plaintiff, the receiver of a bank, had been defeated in an action against the county of Niagara to recover for certain overdrafts claimed to have been made by its county treasurer, and a statute was passed authorizing the Supreme Court to appoint a referee to rehear the plaintiff's claim. The statute was declared void, and it was held that, as the judgment in favor of the county had been on the merits it was just as much above legislative invasion as if it had been in favor of the receiver. So in *Matter of Chapman* v. *City of New York* (168 N. Y. 80) it was held that a statute requiring the city to repay a public officer the expenses incurred by him in successfully defending a proceeding to remove him from office was unconstitutional and void. In *Bush* v. *Board of Supervisors of Orange Co.*

(159 N. Y. 212) it was held that where there is no legal or moral obligation on the part of the town to pay, a statute authorizing payment is in conflict with the provision of the Constitution which forbids the town giving any money to or in aid of an individual. It would seem, therefore, that under the authorities, no less than under the express terms of the Constitution, the statute before us is invalid.

The order appealed from should be affirmed, but without costs.

Parker, Ch. J., Gray, O'Brien, Bartlett, Haight and Werner, JJ., concur.

Order affirmed.