In the Matter of the Application of FRANK J. CARR, Respondent, for a Peremptory Mandamus Order against CHARLES E. ROESCH, Mayor of the City of Buffalo, and Others, Appellants.*

Fourth Department, November 12, 1930.

* Affd., 255 N. Y. 614.

*Charles L. Feldman* [*James A. Deckop* of counsel], for the appellants.

*William S. Rann,* for the respondent.

All concur, except SEARS, P. J., and TAYLOR, J., who dissent and vote for reversal on the law and for dismissal of the petition in an opinion by SEARS, P. J. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

The following is the opinion delivered at Special Term:

PIERCE, J. The petition of Frank J. Carr shows that he was appointed a patrolman on the police force of the city of Buffalo on the 1st day of July, 1915; that he continued in the service of the city as such patrolman until the 13th day of January, 1926, when he was promoted and appointed to the position of deputy chief of police (nights), and continued in the service of the city in that capacity until January 16, 1928, when his title to office was changed and his position was designated as deputy commissioner of police and that he continued in that capacity in the service of the city until the 31st day of December, 1929; that on the 27th day of December, 1929, the petitioner filed with the board of police pensions an application for retirement, to take effect on the 31st day of December, 1929, and asking that his name be placed upon the retired list and that the pension to which he was entitled be granted, certified and allowed, and that the defendants, constituting the board of police pensions, have neglected and refused to grant the

pension to which the petitioner claims he is entitled under subdivision 3 of section 464 of the Charter of the City of Buffalo.

None of the material allegations of the petition are denied. The defendants contended that to grant the pension would be a violation of law, in that " no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes " (State Const. art. 8, § 10); that the provisions of the present Charter of the City of Buffalo, in relation to the police pension fund, are invalid, for the reason that neither the city of Buffalo, its common council nor its electorate possesses the power to enact such legislation, claiming that section 80 of the Civil Service Law precludes the granting of pensions to police or firemen.

Section 80 of the Civil Service Law (added by Laws of 1922, chap. 591, as amd. by Laws of 1923, chap. 708, and Laws of 1924, chap. 48) says: " No county, city, town or village shall hereafter create any officers' or employees' retirement system."

The present local pension system is a product of years of development and growth. It is no new system. Originally it was intended to take care of those in the police and fire departments who contracted disease or received injuries while in the discharge of their duties. Then its provisions were extended to the widows and children of those who lost their lives while in the discharge of their duties. Then it was extended to those who had become physically incapacitated or unfit to continue their services, and for certain long service pensions were granted. The length of service and the conditions under which pensions might be granted have been changed from time to time by legislative authority, and recently by local authorities, under the powers granted by home-rule provisions of the Constitution and statutes.

Without going more into the history of this system, I will commence with section 264 of chapter 217 of the Laws of 1914 (as amd. by Laws of 1916, chap. 260, and Laws of 1918, chap. 522), known as the Charter of the City of Buffalo: " The council shall be the board of trustees of the police pension fund mentioned and established in and by this section. * * * (3) The council shall retire and shall grant a pension to any member of the police force [* * *] who, by long service and exposure while in the actual service of the department, shall have contracted without fault or misconduct on his part any disease or disability, * * *. On and after the first day of July, nineteen hundred and thirteen, upon

the application of any member of the police force, of rank higher than that of sergeant [or lieutenant, including the chief of police], who shall have served twenty-five years in the police department, the council shall retire and shall grant a pension to said person. * * *." And the charter continues, as to the various grades and amounts of pensions. The material amendments are included within brackets, and the section was materially altered on and after July 1, 1923. (Laws of 1923, chap. 108.)

In 1923, so as to allow the inhabitants of any city greater power of self-government, article 12 of the Constitution was amended so as to allow " Every city shall have power to adopt and amend local laws not inconsistent with the Constitution and laws of the State relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, * * * the wages or salaries, the hours of work or labor, * * * and the government and regulation of the conduct of its inhabitants and the protection of their property, safety and health " (State Const. art. 12, § 3). These provisions took effect on January 1, 1924.

To carry out the intent and purpose of this constitutional amendment, the City Home Rule Law was passed (Laws of 1924, chap. 363). Section 11 of this act gives to the city, among others, the right to adopt and amend local laws. " The local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of the city relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, the incurring of its obligations, * * * management and use of its streets and property, the wages or salaries, the hours of work or labor, * * * the government and regulation of the conduct of its inhabitants and the protection of their property, safety and health."

The act further continues and specifies some legislation which must be submitted to a vote of the qualified electors of the city and still others which may be so submitted upon presentation of a petition signed by a certain number of the electors; and one of the questions which may be presented, if a petition is presented, is a provision which " changes a provision of law relating to the maintenance or administration of a pension fund or retirement system in such city, in connection with the police or fire department of such city " (Laws of 1924, chap. 363, § 17, subd. 6).

The provisions of the so-called City Home Rule Law were new

and somewhat of an experiment. Several amendments have been passed. Neither the Legislature nor the courts were entirely satisfied as to just what the local legislative body might do, and to set that question at rest the Legislature, by chapter 646 of the Laws of 1929, ratified all acts of local legislative bodies of the cities which had been authorized by the so-called City Home Rule Law or which could have been delegated by the Legislature.

The present charter, regularly adopted by a vote of the electors of the city, by section 460 provides for a board of police pensions, as follows: " There shall be a board of police pensions consisting of the mayor, president of the council and the comptroller, which board shall be the successor of the board of trustees of the police pension fund as heretofore constituted. Said board shall administer the police pension fund and grant all pensions therefrom. The city treasurer shall be the treasurer of the fund."

The above brief review of the police pension system in the city of Buffalo I think is sufficient to show that the city has not attempted to create any new pension system or employees' retirement system, and that the local system is lawfully in existence and will continue as a local pension system until section 75 of the Civil Service Law (added by Laws of 1922, chap. 591, as amd. by Laws of 1923, chap. 708, and Laws of 1924, chap. 48) is complied with, which gives the local boards of counties, cities, towns and villages the right to become members of the State retirement fund.

Defendants claim that the granting of a pension to the petitioner would be a violation of the Constitution in granting extra compensation and as an unlawful use of the public funds. (State Const. art. 3, § 28; Id. art. 8, § 10.)

The petitioner's application is based upon subdivision 3 of section 464 of the present Charter of the City of Buffalo, which reads as follows: " The board shall upon his application retire: * * * (3) Any member holding a position or office in the department at the time this act takes effect, superior to the grade or rank of captain, having a combined service in the department of not less than ten years in any grade or rank together with service of not less than one year in a position or office superior to the grade and rank of captain."

The objection to this provision is that the petitioner had fully complied with all of these requirements and was under its provisions entitled to retirement and a pension on the 1st day of January, 1928, when the charter took effect.

Subdivision 2 of the same section of the charter grants to " any member after twenty years of actual service in said department or a combined service of twenty years in the police and fire departments

of the city," a retirement and pension. Undoubtedly there were many men in the service on the 1st day of January, 1928, who would be entitled to this pension on the day when the statute took effect.

Under the provisions of the Buffalo Commission Charter of 1914 a policeman had to serve twenty-five years before he was entitled to retirement and a pension. Subsequently that period of service was reduced to twenty years. Many may have been in a situation where they would be entitled to a pension, the term of service having been reduced to twenty years. So that objection, I feel, can be overlooked or disregarded.

The governing board of the city of Buffalo, acting under the power given by the City Home Rule Law, on May 18, 1927, enacted a local law affecting the retirement of police officers, which was effective on July 18, 1927, and is substantially the same as subdivision 3 of section 464 of the present charter. The local enactment is as follows: " Any member of said fund upon his own application, after twenty years of actual service in said department or a combined service therein of not less than one-half said period in any grade or rank, together with service of not less than one year in a position or office superior to the grade or rank of captain or a combined service of twenty years in the police and fire departments, shall be retired from further service." (See Buffalo Local Laws of 1927, No. 3.)

The present charter provision adds nothing to this local enactment which is beneficial to the petitioner. He continued in the service of the city after the enactment of both local laws. It may be that provision is inequitable, but the people voted for it. That is a matter of legislative discretion and not for the courts.

" The retirement is necessarily to be at some time after the passage of the act, and applies only to persons who until retired shall remain in ' active service,' from which by virtue of the statute they are to be retired." (Hammitt v. Gaynor, 144 N. Y. Supp. 123.)

That case discusses quite minutely the provisions for granting pensions and is cited by the defendants, a careful reading of which convinces me that this local provision which the petitioner invokes is not violative of any provision of the Constitution or statutes of the State. The petitioner continued to serve several years after he probably could have retired and have been entitled to his pension. A very similar situation was discussed and decided in the case of State of Nebraska ex rel. Haberlan v. Love (89 Neb. 149; 34 L. R. A. [N. S.] 607; 131 N. W. 196), in which the court says: " In applying these limitations to the instant case, it may be conceded that the pension forms an inducement to the individual to enter and remain in the

service of the fire department, and that the pension in a sense is a part of the compensation paid for these services. * * * In this aspect of the case, if no part of the service was rendered subsequent to the enactment of the law, the compensation would be a gratuity forbidden by the fundamental law of the State. * * * But the relator continued in the service nine years after the law was enacted, and thereby earned a right to his pension under that act so long as it shall remain in force."

When the petitioner tendered his resignation as a member of the police force and applied for his pension, the board of police pensions had no discretion or function to perform except to accept the resignation and grant the pension.

The petitioner is entitled to the order asked for. Inasmuch as the board was not clear as to its power and authority, the order is granted, without costs.

SEARS, P. J. (dissenting). The petitioner entered the service of the city of Buffalo as a patrolman in the police force on July 1, 1915, and continued in this position until January 13, 1926, when he was promoted to the position of deputy chief of police and continued in that position until January 16, 1928, when the name of his position was changed to deputy commissioner of police and he continued in the position of deputy commissioner of police until December 31, 1929, when he filed with the board of police pensions his application for retirement and pension. At the time that the petitioner entered the service of the city, the Charter of the City of Buffalo (Laws of 1914, chap. 217, § 264, subd. 3) contained a provision that "The council shall retire and shall grant a pension to any member of the police force who, by long service and exposure while in the actual service of the department, shall have contracted without fault or misconduct on his part any disease or disability, * * *. On and after the first day of July, nineteen hundred and thirteen, upon the application of any member of the police force, of rank higher than that of sergeant, who shall have served twenty-five years in the police department, the council shall retire and shall grant a pension to said person. * * *." The provision for twenty-five years of service as a prerequisite for a pension was continued by local law No. 8 of the Buffalo Local Laws of 1925, enacted under the provisions of the Home Rule Amendment to the Constitution of the State and the City Home Rule Law (Laws of 1924, chap. 363). The prerequisite period of service was reduced to twenty years by local law No. 8 of the Buffalo Local Laws of

1926. On July 18, 1927, however, a local law became effective which provided for a pension from the police pension fund to which the city contributed, of which the petitioner was a member upon retirement, as follows: "Any member of said fund upon his own application, after twenty years of actual service in said department or a combined service therein of not less than one-half said period in any grade or rank together with service of not less than one year in a position or office superior to the grade or rank of captain or a combined service of twenty years in the police and fire departments, shall be retired from further service." (Buffalo Local Laws of 1927, No. 3.) The quoted section of the local law was superseded on January 1, 1928, by article 25, section 464, subdivision 3, of the Charter of the City of Buffalo, adopted by vote of the citizens under the provisions of the Home Rule Amendment of the Constitution and the City Home Rule Law as follows: " The board shall upon his application retire:  *  *  *  (3) Any member holding a position or office in the department at the time this act takes effect, superior to the grade or rank of captain, having a combined service in the department of not less than ten years in any grade or rank together with service of not less than one year in a position or office superior to the grade or rank of captain." Upon such retirement and under section 466 of the charter, the granting of a pension is obligatory upon the city.

On the 18th day of July, 1927, when the local law above referred to took effect, the petitioner had to his credit more than ten years of service as a patrolman, and almost one year and six months of service as deputy chief of police, a position or office superior to the rank or grade of captain. On January 1, 1928, when the new charter went into effect, he had to his credit more than ten years of service as a patrolman and almost two years of service as deputy chief of police. Upon the denial of his application for a pension under the last quoted provision of the charter, this proceeding was instituted to compel the board of police pensions to grant the petitioner such pension. The petitioner has obtained an order of peremptory mandamus, and the appellants in this court make the contention that the local law and the provisions of the section of the present charter, in so far as they authorized the granting of a pension to petitioner, are unconstitutional under article 8, section 10, of the Constitution of the State of New York, as authorizing the gift to the petitioner of money or property of the city.

The legal justification for the establishment of a system of pensions is thus stated in *Hammitt* v. *Gaynor* (144 N. Y. Supp. 123), cited with approval in *Matter of Wright* v. *Craig* (202 App. Div. 684; affd., 234 N. Y. 548): " In its relation to the betterment of

the public service, through the incentive offered to faithful devotion to duty, and through the retirement rather than the retention in service at full pay of those servants who have outlived their usefulness, the purpose of granting pensions is ' a public purpose,' and as affecting a municipality, ' a city purpose,' within the definition of these terms as judicially adopted. (Dillon Mun. Corp. [5th ed.] § 430; *Weismer* v. *Village of Douglas,* 64 N. Y. 91, 99; 21 Am. Rep. 586; *Sun Pub. Assn.* v. *Mayor,* 152 N. Y. 257, 264; 46 N. E. 499; 37 L. R. A. 788.) " A pension payable out of city moneys, which has no relation to the betterment of the service, falls within the condemnation of the Constitution. Thus a pension from a city bestowed on those no longer in the city service, is a mere gratuity. (*Matter of Mahon* v. *Board of Education,* 171 N. Y. 263.)

The short period of service made a condition for obtaining a pension by the present charter section, and the latest local law preceding the charter, and the absence of an age qualification negative the possibility of finding here a purpose to better the service by encouraging the retirement of the superannuated.

We have in this case a situation intermediate between that dealt with in *Matter of Wright* v. *Craig* (*supra*) and that dealt with in *Matter of Mahon* v. *Board of Education* (*supra*). In the first mentioned of these two cases the applicant for the pension granted by chapter 438 of the Laws of 1916 (adding to Civ. Serv. Law, § 21-a; since amd. by Laws of 1917, chap. 768; Laws of 1920, chaps. 746, 751; Laws of 1921, chap. 54, and Laws of 1923, chap. 368) did not become entitled to it until some five years of service after the law was enacted. In the latter-mentioned case the applicant was not in the public service when the law establishing the pension was enacted. In the present case the petitioner was by his service entitled to the pension the moment the provisions for it in the local law and in the charter became effective. Nothing was held out to the petitioner as a reward for future service. As to him it was as though the law provided that he should have a pension upon retirement whenever that might occur. I do not see how such an act has any relation to the betterment of the service and deem it similar in that respect to the situation discussed in the case of *Matter of Mahon* v. *Board of Education* (*supra*).

For these reasons I favor reversal on the law, and the denial of the motion, with costs.

TAYLOR, J., concurs.