In the Matter of the Arbitration between TEACHERS ASSOCIATION, CENTRAL HIGH SCHOOL DISTRICT No. 3, Appellant, and BOARD OF EDUCATION, CENTRAL HIGH SCHOOL DISTRICT No. 3, NASSAU COUNTY, Respondent.

Second Department, June 22, 1970.

*Friedlander, Gaines, Ruttenberg & Goetz (Joseph S. Rosenthal* and *Edward Cherney* of counsel), for appellant.

*Kimmell & Kimmell (Leonard S. Kimmell* of counsel), for respondent.

*Sneeringer & Rowley (Richard R. Rowley* of counsel), for New York State Teachers Association, *amicus curiae.*

HOPKINS, Acting P. J.   This proceeding grows out of a collective bargaining agreement between the petitioner and the respondent which was made in 1968.   The petitioner is an unincorporated association of teachers employed by the respondent, the Board of Education of a central high school district.   The agreement provided for the arbitration of disputes concerning the interpretation and application of its terms.   The petitioner sought arbitration of a claim on behalf of the estate of Renee Schelton, deceased.

Renee Schelton, who died in 1968, was a teacher employed by the respondent.   At the time of her death she had less than 15 years' service with the respondent and she had accumulated 15 days' sick leave.   Schedule C of the collective bargaining agreement stated that, in the event of the death of an employee, the employee's estate would be entitled to payment for the employee's accumulated unused sick leave, on the basis of the same increase in salary as the employee would have been entitled to receive.   That increase, according to Schedule C of the agreement, was measured by this formula:

" an increase in current salary equivalent to current pay for accumulated unused personal sick leave in the District in accordance with the following schedule:

a. up to and including 15 years of service — 20% of accumulated personal sick leave.''

The question presented to the arbitrator was whether that provision was valid. The arbitrator determined that it was enforceable and that the estate of Renee Schelton should receive a sum equal to one twentieth of the pay for the 15 days' sick leave accumulated by her prior to her death. The Special Term held to the contrary, finding that payment of the award would violate section 1 of article VIII of the State Constitution. On this appeal the petitioner urges that the contractual provision is valid and, in consequence, that the arbitrator's award should be confirmed.

Section 1 of article VIII of the State Constitution provides, subject to certain exceptions not material here, that '' No county, city, town, village or school district shall give  *  *  * any money or property to or in aid of any individual, or private corporation or association ''. This provision, like the prohibition directed toward the State itself in section 8 of article VII of the State Constitution, was intended to curb raids on the public purse for the benefit of favored individuals or enterprises furnishing no corresponding benefit or consideration to the State (*Matter of Mahon* v. *Board of Educ. of City of N. Y.,* 171 N. Y. 263; 3 Antieau, Municipal Corporation Law, § 22.15).

The effect of the constitutional interdiction on pensions and allowances for public employees has been traced in a developing pattern of cases. Thus, it was early held that such advantages available to public servants must attach to present employment; pensions granted after the cessation of employment offended the Constitution (see, e.g., *People ex rel. Waddy* v. *Partridge,* 172 N. Y. 305) ; and an employee within a pension system established by a municipality possessed no vested right to its benefits until he had complied with the conditions precedent to retirement (*Matter of Day* v. *Mruk,* 307 N. Y. 349). Later, the inducement to enter and remain in public service, which pensions and other promised benefits promote, as a consideration to the State not within the constitutional ban, was acknowledged by the validation of statutes allowing credit for tenure both before and after their enactment (*Matter of Wright* v. *Craig,* 202 App. Div. 684, affd. 234 N. Y. 548) ; and the employee's rights under the pension system were preserved by constitutional mandate (N. Y. Const., art. V, § 7).

In short, the courts have recognized that the State and its municipalities in granting pensions, vacations or military leave are not conferring gifts upon their employees, but that essentially the promised rewards are conditions of employment — a

form of compensation withheld or deferred until the completion of continued and faithful service (*Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208, 212; *Hoyt* v. *County of Broome,* 285 N. Y. 402; *Henn* v. *City of Mount Vernon,* 198 App. Div. 152; *Herreboudt* v. *Board of Educ. of Peekskill City School Dist.,* 41 Misc 2d 547; *Anderson* v. *Board of Educ. of Peekskill City School Dist.,* 5 Misc 2d 1056; *Timmerman* v. *City of New York,* 69 N. Y. S. 2d 102, affd. 272 App. Div. 758). Other jurisdictions have reflected the same enlightened view (see, e.g., *Terry* v. *City of Berkeley,* 41 Cal. 2d 698; *Commonwealth ex rel. City of Philadelphia Police Pension Fund Assn.* v. *Walton,* 182 Pa. 373; *State ex rel. Haberlan* v. *Love,* 89 Neb. 149; *Christie* v. *Port of Olympia,* 27 Wn. 2d 534).

In our opinion, sick leave as a condition of employment enjoys the same shelter from the constitutional bar. It offers an inducement to competent and efficient workers to enter public service; and the right to accumulate unused sick leave encourages the employee to stay in public service and at the same time deters absenteeism for trifling ailments (cf. *Quinlan* v. *City of Cambridge,* 320 Mass. 124; *City of Orange* v. *Chance,* 325 S. W. 2d 838 [Tex.]). Indeed, the Legislature has sanctified its practice by municipalities and Boards of Education (Civil Service Law, § 167, subd. 4; Education Law, § 501, subd. 11; § 3107; General Municipal Law, § 92). Nor do we see any constitutional barrier to the payment of a sum equivalent to a percentage of accumulated unexercised sick leave when the employee dies in service or severs his relationship. That term of the employment as a benefit to the employee equally serves the end of discouraging unnecessary absences and influencing the public servant to continue in employment — an important consideration for the public employer.

Beyond the issue of constitutional validity, however, the respondent urges that as a creature of legislatively endowed power it lacks the authority to make the contract for the payment of the amount attributable to the unused sick leave. It relies both on a letter from Counsel for the State Education Department, stating that a school district may pay employees for unused vacation time, but not for unused sick leave, citing section 92 of the General Municipal Law, and on opinions of the State Comptroller to the same effect (23 Op. St. Comp. 1967, p. 649; 25 Op. St. Comp. Jan. 21, 1969, No. 69-37). We do not agree with these interpretations of the respondent's powers.

A Board of Education possesses broad authority to make contracts for the employment of teachers. It has all the powers of trustees of school districts (Education Law, § 1710), who in turn

have power to employ teachers and to determine their compensation (Education Law, § 1604, subd. 8). In addition, a Board of Education "shall have power, and it shall be its duty: * * * 16. To contract with and employ such persons as by the provisions of this chapter are qualified teachers * * * and to adopt rules and regulations governing the excusing of absences of all teachers and other employees and for the granting of leaves of absence to such employees either with or without pay" (Education Law, § 1709). That express power, which seems precisely applicable to the contractual provision in question, is expanded to include authority to exercise any power reasonably required to discharge the board's duties under the mandate of the Education Law (Education Law, § 1709, subd. 33).

At the time the collective bargaining agreement between the petitioner and the respondent was made, the Legislature had declared that it is the public policy of the State " to promote harmonious and cooperative relationships between government and its employees " and that the public policy could be best effectuated by " requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees " (Civil Service Law, § 200). The written agreements thus explicitly approved and commanded were intended to provide for the terms and conditions of public employment, defined by the statute as " salaries, wages, hours and other terms and conditions of employment " (Civil Service Law, § 201, subd. 5).

A survey of these provisions results necessarily in the conclusion that the Legislature placed the responsibility for making agreements for the hiring and compensation of teachers on the respondent; moreover, so that this responsibility might be properly discharged, the Legislature simultaneously bestowed ample powers on the respondent to deal extensively with the conditions of employment, including, unquestionably, the granting of sick leave. Nowhere in the statutes has the Legislature withdrawn from a Board of Education the power to pay for unused sick leave. In the absence of an express legislative restriction against bargaining for that term of an employment contract between a public employer and its employees, the authority to provide for such payment resides in the respondent under the broad powers and duties delegated by the statutes. Were it otherwise, a Board of Education would not be able to bargain collectively and to make agreements concerning terms of employment with its teachers unless specific statutory authority for each provision of the agreement existed. Indeed, by that argu-

ment, the respondent could not have made the agreement to arbitrate under which this proceeding is brought, for no statute expressly provides for arbitration.[1] Yet, such a narrow and inflexible construction would virtually destroy the bargaining powers which public policy has installed in the field of public employment and throttle the ability of a Board of Education to meet the changing needs of employer-employee relations within its district.

The respondent's reliance on section 92 of the General Municipal Law does not serve to vitiate the contract which it made. Section 92 does indeed sanction the granting of vacations and sick leave and the payment for unused vacation time, without providing for the payment of unused sick leave. In those terms the statute merely makes express the power of the respondent to do that which it was already empowered, either expressly or impliedly, to do. The respondent emphasizes its contention by pointing out that in 1966 the Legislature passed a bill which would have permitted public employers to pay for unused sick leave and that the Governor vetoed the bill, an action which, it is said, indicates the lack of power of the respondent to make the agreement in 1968 to pay for unused sick leave. In denying approval to the bill, however, the Governor quoted from the Comptroller's memorandum in opposition which claimed that the bill contravened the constitutional prohibition against gifts of municipal funds to an individual.[2] Thus, the veto was not based on a belief that public employers should not have the power to enter into agreements for payments scaled to unused sick leave or that such payments would be imprudent or against the public interest.

As we have seen, a provision for sick leave or for the payment of a specified percentage in salary as an equivalent is not a gift and does not offend the Constitution (cf. *Matter of Carr* v.

---

1. The right to enter into an arbitration agreement where a statute neither grants nor forbids the right has been upheld (*Norwalk Teachers' Assn.* v. *Board of Educ. of City of Norwalk,* 138 Conn. 269; *State ex rel. Fire Fighters Loc. No. 946, I.A.F.F.* v. *City of Laramie,* 437 P. 2d 295 [Wyo.]).

2. The Comptroller put his opposition on the ground that the use of sick leave required the illness of the employee as a condition precedent, and that unused sick leave meant that illness, the condition, had not occurred, so that payment would be a gift (N. Y. Legis. Annual, 1966, p. 396). But that argument fails to meet the point that sick leave is merely deferred compensation, just as vacation pay or pensions. Moreover, the Comptroller had found acceptable subdivision 1 of section 92 of the General Municipal Law, which allowed the payment of unused vacation time (16 Op. St. Comp., 1960, No. 47, p. 30), a position seemingly inconsistent with his opposition to the 1966 bill.

*Roesch*, 231 App. Div. 19, 24-25, affd. 255 N. Y. 614; *Hammitt* v. *Gaynor*, 82 Misc. 196, affd. 165 App. Div. 909; *Pohle* v. *Christian*, 21 Cal. 2d 83). Consequently, the advice to the Governor upon which his veto rested was premised on a view of the constitutional provisions that was not supported by prior judicial construction. Thus, neither the absence of express power in section 92 of the General Municipal Law nor the veto of a bill to make the power express in section 92 changes the essential character of the powers already broadly vested in the respondent by the provisions of the Education Law and the Civil Service Law. The undertaking by the respondent to pay for unused sick leave in the collective bargaining agreement was an exercise of reasonably implicit power pendent to its express power and duty to contract with its teachers and to determine the compensation and conditions of employment under which the teachers were to perform their services.

Accordingly, the judgment should be reversed, on the law, without costs; the application should be granted; and the award of the arbitrator should be confirmed. The findings of fact below should be affirmed.

MUNDER, J. (dissenting). I dissent because I share the view expressed by the Special Term, by the State Comptroller, and by the Governor when in 1966 he vetoed an amendment to section 92 of the General Municipal Law which would have permitted municipalities to provide cash payments for unused sick leave, that any attempt by a county, city, town, village or school district to pay an employee in cash for unused sick leave violates section 1 of article VIII of the New York State Constitution. The majority cites a number of cases in which New York courts have upheld the validity of payments for pensions and other allowances for public employees, but *none* involved unused sick pay, which is a relatively recent development of the collective bargaining process. To me, sick pay is fundamentally different from the items previously exposed to judicial scrutiny.

Sick pay is a form of insurance protection against an employee's loss of wages due to illness. If the contingency insured against, namely, illness, does not occur, I see no reason why the " insured " employee should recover the benefits. As the Governor noted in 1966, " The occurrence of illness is the condition precedent which activates the employer's obligation to pay for absences caused by such illness. Where there is no illness, the condition never occurs and the employer's obligation never comes into being " (N. Y. Legis. Annual, 1966, p. 396).

The provision in the employment contract before us seeks to circumvent this, i.e., it seeks to have the employer school district pay cash to the estate of one of its employees even though the district's obligation to do so never came into being. Such a payment " ' would be a gratuity forbidden by the fundamental law of the State ' " (*Matter of Carr* v. *Roesch*, 231 App. Div. 19, 25). For this reason, the arbitrator's award seeking to implement this provision was violative of the public policy of the State.

In the exercise of its general equity powers, the Special Term acted properly in refusing to confirm the award (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7510.07). The order should be affirmed.

MARTUSCELLO, LATHAM and BRENNAN, JJ., concur with HOPKINS, Acting P. J.; MUNDER, J., dissents in opinion.

Judgment reversed, on the law, without costs, application granted and award confirmed. The findings of fact below are affirmed.