Bertram Harnett, J.
William Richter, resident, qualified voter, and taxpayer of Union Free School District No. 26, Town of Hempstead, brings this action to challenge the authority of the Board of Education to enter into two contracts, covering a period of four years, for the employment of a Director of Educational Services and a Director of Special Services. Richter complains that the board does not have the requisite authority or budget approval for these positions.
The defendant board and school officials move to dismiss his complaint and seek summary judgment.
In attacking the propriety of the contracts, Richter relies upon subdivision 16 of section 1709 of the Education Law which provides that the board shall employ “ qualified teachers ” and ‘ ‘ such persons as may be necessary to supervise, organize, conduct and maintain athletic, playground and social center activities”. He claims the board’s power is limited by statute to employees in the categories explicitly listed. Whatever the previous validity of such a position, the contracting authority for boards of union free school districts to employ supervisory staff is now explicit in a recent amendment to paragraph (b) of subdivision 1 of section 3012 of the Education Law. (L. 1972, ch. 953, § 3; see, infra, p. 572.)
Moreover, subdivision 16 of section 1709 should be read in conjunction with subdivision 33 of that statute which provides that the board ‘ ‘ shall have all the powers reasonably necessary to exercise powers granted expressly or by implication and to discharge duties imposed expressly or by implication by this chapter or other statutes ”. (Matter of Teachers Assn. of Cent. High School Dist. No. 3 [Bd. of Educ. Cent. High School No. 3], 34 *572 AD 2d 351.) This includes such personnel as may be reasonably required to operate the school, including architectural services, as held in Pierce v. Board of Educ. of Union Free School Dist. No. 12, 125 Misc. 589, 599, affd. 216 App. Div. 787, an employment agency to secure an accountant (25 Opns. St. Comp., 1969, p. 350), part-time typist (3 Opns. St. Comp., 1947, p. 350), or as here, directors of educational services and special services. The prescribed duties for these latter two positions are consistent with the proper functioning of a school and the board has qualified discretion to allocate its employees and resources in the manner it deems most useful.
The central question to be decided, then, is whether, as urged by Richter, budgetary constraints imposed by subdivision 1 of section 1718 of the Eduction Law prohibited the board’s contracting on June 13, 1972 to employ two supervisory administrators each for a period of four years. Subdivision 1 of section 1718 of the Education Law provides: “ No board of education shall incur a district liability in excess of the amount appropriated by a district meeting unless such board is specially authorised by law to incur such liability ”, (Emphasis supplied.)
On June 8, 1972, section 3012 of the Education Law entitled “Tenure: certain union free school districts” was amended, giving school boards explicit authority to make five-year employment contracts with supervisory personnel. Paragraph (b) of subdivision 1 of the amended section now reads: “ (b) Principals, supervisors and all other members of the supervising staff shall be appointed by the board of education of a union free school district having a population of more than forty-five hundred inhabitants and employing a superintendent of schools, upon the recommendation of such superintendent of schools. The service of a person appointed to any of such positions may be discontinued at any time on the recommendation of the superintendent of schools, by a majority vote of the board of education, except that the board of education may, in its discretion, enter into an employment contract with any principal, supervisor, or member of the supervising staff for a period of from one to five years. Such contract may include duties, compensation, and other terms and conditions of employment and may specify the grounds on which such contract may be terminated and the procedures to be followed in the event of termination prior to its expiration date ”. (Emphasis supplied to portion of statute added the 1972 amendment, L. 1972, ch. 953, § 3.)
Prior amendments in 1971 increased the probation period for teacher tenure from three years to five in the companion statu *573 tory paragraph (a) of subdivision 1 of section 3012 of the Education Law but inadvertently omitted tenure provisions for princi-" pals, supervisors and supervisory staff. (See L. 1971, chs. 116, 117, 1102.) The 1972 amendment filled the legislative gap and extended long-term job security to these school administrators' by way of authorizing their five-year employment contracts. The board’s execution of four-year contracts for the positions of Director of Special Services and Director .of Educational Services, who are within the general category of “ supervising staff ”, took place after the effective date of the 1972 amendment, and was within the board’s explicit statutory authority.
Accordingly, the instance here is within the “ unless ” clause of subdivision 1 of section 1718 of the Education Law. The board is “ specially authorized by law ” to make the contracts in question. Paragraph (b) of subdivision 1 of section 3012 gives the board power to enter into the specified long-term employment contracts ‘ in its discretion ’ ’. It says the ‘‘ contract may include duties, compensation, and other terms and conditions of employment ”, including “the grounds on which such contract may be terminated”. The .statute authorizes the employment contract for school supervising personnel as an alternative or supplement to the traditional hiring by appointment.
Indeed, a four-year contract authorized under paragraph (b) of subdivision 1 of section 3012 is necessarily beyond ‘ ‘ amount appropriated by a district meeting” (Education Law, § 1718, subd. 1) since the budgets are annual events. At the outset of a four-year contract, not only are there no amounts appropriated for years two, three and four, but there could never be an assurance that such sums would ever be appropriated. Still, pursuant to paragraph (b) of subdivision 1 of section 3012 of the Education Law the board has the power to incur the questioned liabilities, mandating their payment by the school district regardless of budgetary action. If it were otherwise, no enforceable agreement could be created beyond one year.
Traditionally, voters in local districts have maintained some control over school expenditures during each year via budget votes. That interest was fortified by a qualified prohibition on the board’s power to incur liabilities in excess of the “ amount appropriated by a district meeting ”. Section 1718 of the Education Law, originally enacted in 1910 as section 314 of the Education Law and derived from Consolidated School Law of 1894 (ch. 556, § 23) (see L. 1864, ch. 555), was designed to protect that interest.
Since that statute became law, large changes have taken place in the financing of public education. Increasing State and Fed *574 eral funds support the operation of local school systems. (See U. S. Code, tit. 20, § 861 et seq.; Education Law, § 3713, subd. 1; § 36Q1 et seq.) Even without the appropriation of funds for education by local voter approval, school systems may operate and incur liabilities for the ‘ ‘ ordinary contingent expenses ’ ’ needed to teach children, including superintendent, teachers and supervisory personnel salaries, on what is euphemistically called an “austerity budget ”. (See Education Law, § 1709, subd. 20; §*1717; Matter of Raffone v. Pearsall, 39 A D 2d 208.) An austerity “ budget ” which is operative in an amount declared “necessary” by the school boayd to run the schools, notwithstanding rejection of a proposed school district budget by local voters, mandates the raising and appropriation of local funds by a separate real property tax. The concept of ‘ ‘ school must go on” has to some degree eroded local autonomy over education expenditures. (Cf. Matter of Rodman v. Lofaso, 23 Misc 2d 337, app. dsmd. 13 A D 2d 974.)
Further, greater public concern for attracting and retaining personnel, as well as for teacher and education personnel job security, has resulted in statutory protection of those interests, even perhaps at the cost of lessening local voter control of the administration of education and its fiscal concomitants. The annual community voter vigil over school district expenditures, while in recent years appearing to be of greater significance because of increasing numbers of local school budget defeats, has worked, in practice, a decreasing effect upon the continuing educational system.
The issue here is not a philosophical or policy-making one for the courts to decide. The Legislature has spoken in terms which cannot be disregarded. Subdivision 1 of section 1718 of the Education Law permits the board to incur specially authorized liabilities without regard to budgetary appropriations. The recent special enactment of statutory job protection for supervisory personnel, paragraph (b) of subdivision 1 of section 3012 of the Education Law, provides such authorization.
Accordingly, the two employment contracts were lawfully executed and summary judgment is therefore granted in favor of the defendants dismissing the complaint.
Submit judgment on notice.