OPINION OF THE COURT
Alan D. Oshrin, J.
The plaintiff, Patchogue-Medford Union Free School District, has commenced this action seeking judgment declaring that sections 3012 and 3020-a of the Education Law violate article VIII, section 1 of the New York Constitution insofar as they require a school board to pay salary, benefits and other emoluments of employment to a teacher who has been suspended and who is rendering no services during the pendency of disciplinary proceedings; further declaring that section 3015 of the Education Law requires that when a board of education suspends a teacher during the pendency of a disciplinary proceeding pursuant to section 3020-a of the Education Law and the teacher refuses or fails to render meaningful service that the district shall withhold payment of salary, benefits and emoluments; further declaring that to the extent that sections 3012 and 3020-a of the Education Law mandate payment of salary to teachers who are suspended during the pendency of disciplinary proceedings and who have failed to perform contracted services under a collective bargaining agreement, such mandate is violative of the Contract Clause, article I, section 10 of the United States Constitution; further declaring that sections 3012 and 3020-a of the Education Law violate article IX, section 1 of the New York Constitution in that the burden of proof set forth upon boards of education which seek to terminate employment of tenured teachers limit the right of students to obtain public education and instruction; and further declaring that the plaintiff is entitled to recover from the teacher monies paid to the teacher for salary, benefits and other emoluments for the period March 31, 1991 to the date of *569 the second amended complaint (May 4, 1995) upon the theory of unjust enrichment.
The teacher in question has been employed by the school district since September 1971 as a secondary school health teacher. He is certified to teach both secondary biological services and health and has taught at both the middle and high schools during his employment in the district. The district commenced a disciplinary proceeding against the teacher by a statement of charges dated December 19, 1994. This action was commenced by service of a summons and complaint dated March 1, 1995. A second amended complaint, dated May 4, 1995, has been served. The charges relate to conduct as early as March 1, 1991, and as late as November 15, 1994. A substantial portion of the charges relate to the quality of the education provided by the defendant to the students of the Patchogue School District during a period of some three years. The charges also allege conduct which, if established, might constitute insubordination and also assert that on numerous occasions the defendant reported late for work and/or failed to appear for work.
The teacher continued to teach from 1971 until June of 1994, when he was removed from the classroom because, in the words of the Superintendent of Schools, "I determined it was in the students’ best interest that he be kept away from them”. Paragraphs 101 through and including 115 of the statement of charges refer to conduct allegedly occurring from March through June of 1994. The conduct alleged generally refers to inappropriate comments made by the teacher and claims that the teacher was unable to work because of family illness and personal illness. After being removed from the classroom in June of 1994, and until the charges were preferred in December of 1994, the teacher was assigned to work in the district office, and on June 8, 1994 was informed by the Superintendent that he would be assigning the teacher to perform office work related to the health education curriculum.
On June 8, 1994 the teacher was provided with a high school health textbook, the New York State Syllabus for Health Education and curriculum forms which had been used in the past by Frank J. DiMartino who was employed as the academic director at the Patchogue-Medford Union Free School District. The teacher was asked to rewrite and update the district’s high school health education curriculum. One can only speculate as to why a copy of the curriculum which the teacher had been asked to update and rewrite was not provided *570 to him at that time. On June 13, 1994 the teacher asked Mr. DiMartino for a copy of the video listings from the district’s curriculum material center and a copy of the district’s recently revised health seven curriculum. It took two days for those materials to be provided to the teacher. When the teacher showed Mr. DiMartino possible outlines, he was told that they were deficient and should reflect "more substantive work product”. On June 17th Mr. DiMartino determined the materials provided were not acceptable, were sketchy and incomplete, and at that time Mr. DiMartino concluded that the teacher had refused to perform services for the district for which he was being paid.
Notwithstanding this conclusion, when school started in September 1994 Edward Cinelli, the new academic director for the plaintiff school district, met with the teacher and directed him once again to rewrite and update the high school curriculum for health and this time added the middle school health curriculum, thereby asking the teacher to create one integrated curriculum document. This time the teacher was provided with the health syllabus for grades K through 12, the 1990 health curriculum for grades 10 through 12, the Health Education Department Handbook, and the 1987 health education curriculum from BOCES for grades 7 through 12. After some five months of the teacher working on the curriculum, meetings with Mr. Cinelli, comments, recommendations and criticisms by Mr. Cinelli, Mr. Cinelli found the efforts of the teacher to be inadequate. If any writings were provided to the teacher as to the quality of his performance during this period, none have been provided to the court. Mr. Cinelli concludes his affidavit by asserting that the teacher had failed to produce dozens and dozens of lesson plans, as required by his December 16, 1994 directive. On March 1, 1995 the Superintendent ordered the teacher to leave the district office, where the teacher was working on the health curriculum, and not to report to work.
In passing it is also necessary to note that notwithstanding the contention of the district that it is entitled to withhold pay because of the refusal of the teacher to perform work between June of 1994 and March of 1995, the rather detailed statement of charges fails to contain a single allegation as to job performance relative to that time frame.
Once a public school teacher has obtained tenure the individual cannot be deprived of the constitutionally protected property interest in the right to continued employment and compensation without due process of law (see, Cleveland Bd. of *571 Educ. v Loudermill, 470 US 532 [1985]; Board of Regents v Roth, 408 US 564 [1972]; Perry v Sindermann, 408 US 593 [1972]). Similarly, it has been consistently held that compensation is a matter of such substantive right on the part of the teacher that it cannot be taken away except pursuant to explicit statutory or collective bargaining authorization, and that the pay of a teacher suspended pursuant to section 3020-a (2) of the Education Law pending hearing and determination of disciplinary charges may not be withheld (see, e.g., Matter of Winter v Board of Educ., 79 NY2d 1 [1992]; Matter of Derle v North Bellmore Union Free School Dist., 77 NY2d 483 [1991]; Matter of Adlerstein v Board of Educ., 64 NY2d 90 [1984]; Matter of Board of Educ. v Nyquist, 48 NY2d 97 [1979]; Matter of Jerry v Board of Educ., 35 NY2d 534 [1974]).
This case law history is reflected in section 3020-a (2) (b) of the Education Law, as amended effective August 25, 1994, which governs disciplinary procedures against persons enjoying the benefits of tenure and which provides "The employee may be suspended pending a hearing on the charges and the final determination thereof. The suspension shall be with pay, except the employee may be suspended without pay if the employee has entered a guilty plea to or has been convicted of a felony crime concerning the criminal sale or possession of a controlled substance * * * or a felony crime involving the physical or sexual abuse of a minor or student.” (Education Law § 3020-a [2] [b].)
Having set forth the statute challenged, and the case law which such statute codifies, the court shall now address the constitutional challenges. At the outset, the court observes that there are several principles of statutory construction and interpretation as pertain to constitutional challenges which are applicable here. First, that "[t]he courts should not strike down a statute as unconstitutional unless such statute clearly violates the Constitution” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]). Second, that "[statutes are presumed valid and constitutional and the one challenging the statute has the burden of showing to the contrary” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [b]). Third, that "[a] statute should be construed, if possible, to uphold its constitutionality” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]).
Applying these principles it has been held that it is with great reluctance and as a last resort that the courts will strike down a solemn legislative enactment on the ground that it conflicts with the State or Federal Constitutions (see, Matter of *572 Ahern v South Buffalo Ry. Co., 303 NY 545 [1952]). It has also been held that every presumption will be indulged in to support and sustain legislation, and it will be assumed that the Legislature intended to enact a statute which is in harmony with the Federal and State Constitutions (see, People v Epton, 19 NY2d 496 [1967], mot to amend remittitur granted 19 NY2d 1017 [1967]; People v Arez, 64 Misc 2d 723 [1970], affd 28 NY2d 764 [1971]). It has been further held that the party alleging the unconstitutionality of a statute has the heavy burden of demonstrating the infirmity beyond a reasonable doubt (see, Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358 [1978]; Matter of Schultz Mgt. v Board of Stds. & Appeals, 103 AD2d 687 [1984], affd 64 NY2d 1057 [1985]).
Significantly, it has been held that courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty and where the invalidity of the act is apparent on its face (see, People v Norris, 46 Misc 2d 44 [1965]; National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Misc 2d 722 [1959], affd 10 AD2d 688 [1960], affd 8 NY2d 197 [1960], appeal dismissed 365 US 298 [1961]), and that this rule is particularly to be applied in a case where the Court of Appeals has rendered decisions in the area covered by the statute (see, Matter of Excelsior Pictures Corp. v Regents of Univ. of State of N. Y., 2 AD2d 941 [1956], affd 3 NY2d 237 [1957]; Blye v Globe-Wernicke Realty Co., 68 Misc 2d 948 [1972], appeal dismissed 30 NY2d 749 [1972]) or where the Court of Appeals has implicitly, if not, explicitly upheld the validity of the statute (see, Blye v Globe-Wernicke Realty Co., 68 Misc 2d 948, supra; People v Norris, 46 Misc 2d 44, supra).
It is within this framework that the court addresses each of the plaintiffs’ constitutional challenges. The plaintiffs claim that sections 3012 and 3020-a of the Education Law violate article VIII, section 1 of the New York Constitution to the extent that such statutes require a school board to continue to pay salary, benefits and other emoluments of employment to a teacher who has been suspended and who is rendering no meaningful services during the pendency of disciplinary proceedings brought against the teacher by the board pursuant to section 3020-a of the Education Law and constitutes an inappropriate gift of public monies.
Article VIII, section 1 of the New York Constitution was intended to curb raids on the public purse for the benefit of favored individuals or enterprises furnishing no corresponding *573 benefit or consideration to the State or locality (see, Matter of Mahon v Board of Educ., 171 NY 263 [1902]; Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ.], 34 AD2d 351 [1970]; Local 456 Intl. Bhd. of Teamsters v Town of Cortlandt, 68 Misc 2d 645 [1971]). It has long been held that the granting of pensions, vacations, military leave and sick leave to public employees are conditions of employment and not gifts of public monies (see, e.g., Matter of Giannettino v McGoldrick, 295 NY 208 [1946]; Hoyt v County of Broome, 285 NY 402 [1941]; Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ.], 34 AD2d 351, supra; Henn v City of Mt. Vernon, 198 App Div 152 [1921]; Local 456 Intl. Bhd. of Teamsters v Town of Cortlandt, 68 Misc 2d 645, supra; Herreboudt v Board of Educ., 41 Misc 2d 547 [1963]).
The payment of salary, benefits and other emoluments of employment to a teacher who has been suspended, but has not yet had a determination of the disciplinary charges asserted against the teacher after hearing, must be viewed as a condition or component of employment enjoyed by tenured teachers and not a gift of public monies (see, Matter of Jerry v Board of Educ., 35 NY2d 534, supra [where the Court observed that the Board of Education’s contention that not to withhold compensation during periods of suspension would constitute a gift of public funds in violation of article VII, section 8 goes too far]). Moreover, the withholding of salary and benefits prior to hearing and determination would be a deprivation of the tenured teacher’s constitutionally protected property interest in continued employment and compensation without due process of law (see, Cleveland Bd. of Educ. v Loudermill, 470 US 532, supra; Board of Regents v Roth, 408 US 564, supra; Perry v Sindermann, 408 US 593, supra). The court finds, therefore, that the plaintiffs’ gift of public monies constitutional challenge is without merit.
The plaintiffs also claim that sections 3012 and 3020-a of the Education Law to the extent that such statutes mandate payment of salary, benefits and other emoluments of employment to teachers who are suspended during the pendency of disciplinary proceedings brought pursuant to section 3020-a of the Education Law, but those teachers have failed to perform the contracted services under a collective bargaining agreement, such mandate is violative of the Contract Clause, article I, section 10 of the United States Constitution and constitute a substantial impairment of the existing contract between the board of education and the collective bargaining agent for such *574 teachers. Inasmuch as the subject collective bargaining agreement is silent on the issue of payment of salary to teachers suspended after charges have been brought pursuant to section 3020-a of the Education Law, and inasmuch as a provision for a payless suspension of a tenured teacher pending resolution of disciplinary charges is not violative of the Education Law and may properly be the term of a negotiated agreement (see, Matter of Board of Educ. v Nyquist, 48 NY2d 97, supra), the court finds the plaintiffs’ Contract Clause constitutional challenge to be without merit.
The plaintiffs also claim that sections 3012 and 3020-a of the Education Law violate article XI, section 1 of the New York Constitution in that the burden of proof set forth therein and imposed upon boards of education which seek to terminate employment of a tenured teacher acts to limit the rights of the students of such a teacher to obtain public education and instruction within the meaning of article XI. Article XI, section 1 provides that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (NY Const, art XI, § 1). Inasmuch as the Constitution places the obligation of maintaining and supporting a system of public schools upon the Legislature, and. not the local school boards, and inasmuch as there is no fundamental right to education or to a minimum level of education under the State Constitution (see, Donohue v Copiague Union Free School Dist., 47 NY2d 440 [1979]; Matter of Bennett v City School Dist., 114 AD2d 58 [1985]) or the Federal Constitution (see, Matter of Levy, 38 NY2d 653 [1976], appeal dismissed sub nom. Levy v City of New York, 429 US 805 [1976], reh denied 429 US 966 [1976]; San Antonio Independent School Dist. v Rodriguez, 411 US 1 [1973]), the court finds the plaintiffs’ right to education constitutional challenge to be without merit.
In concluding this discussion of constitutional challenges the court observes that the plaintiffs clearly failed to meet their heavy burden of demonstrating the constitutional infirmity of section 3020-a of the Education Law beyond a reasonable doubt (see, Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, supra; Matter of Schultz Mgt. v Board of Stds. & Appeals, 103 AD2d 687, supra). The court also observes that the Court of Appeals having rendered decisions in the area of each constitutional challenge to section 3020-a of the Education Law and having implicitly upheld the validity of the present version of section 3020-a by virtue of such version being a cod *575 ification of some 20 years of developing, affirming and reaffirming the principle that the pay of a tenured teacher suspended pursuant to section 3020-a (2) of the Education Law pending hearing and determination of disciplinary charges may not be withheld, this court was presented with a substantial basis to find that section 3020-a could withstand each constitutional challenge.
The court will now address the plaintiffs’ claim that section 3015 (3) of the Education Law requires that when a board of education suspends a teacher during the pendency of a disciplinary proceeding under section 3020-a of the Education Law, and that teacher refuses or fails to render meaningful services to the district during such proceeding, or that there is no meaningful work to assign to such teacher, the district is to withhold payment of salary, benefits and other emoluments of employment until a final determination is made in such proceeding. At the outset the court notes that three principles of statutory construction and interpretation are applicable here. First, that "[t]he legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94). Second, that "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a]). Third, that "[i]t is the duty of the court to harmonize conflicting provisions of a statute if possible, but if there is an irreconcilable conflict, the court must preserve the paramount intention although this may lead to the rejection of some subordinate and secondary provision” (McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [b]).
Section 3015 is entitled "[tjeacher’s salary when payable” and is designed to provide authority for districts to establish an orderly payroll process (see, 1982 Opns St Comp No. 82-364). Subdivision (2) specifically provides that nothing contained therein shall be construed to alter the provisions of section 3012 which governs tenure. Inasmuch as section 3020-a governs disciplinary procedures and penalties concerning persons enjoying tenure as provided in section 3012, by the plain language of section 3015 and reading section 3012 in conjunction with section 3020-a, section 3020-a too may not be altered *576 by section 3015. Section 3015 (3) which provides that "[n]othing contained in this section shall be construed to authorize payment in advance of rendering service to the school district” (Education Law § 3015 [3]), therefore, cannot be read so as to interfere with the operation of sections 3012 and 3020-a. The court finds, therefore, that the plaintiffs’ claim that section 3015 (3) prohibits payment of salary and benefits to a suspended tenured teacher pending a final section 3020-a determination is without merit.
In concluding, the court finds that the plaintiffs’ argument that it can withhold pay from the teacher during the period of suspension because the teacher has refused to perform the nonteaching duties assigned to him is without merit. A tenured teacher suspended with pay may be assigned to a nonteaching assignment that "bears reasonable relationship to the suspended teacher’s competence and training and is consistent with the dignity of the profession” (Matter of Alderstein v Board of Educ., 64 NY2d, at 100, supra). In the event that a teacher appears for such assigned task but fails to adequately perform such assigned task, then such teacher may be charged with a second set of charges for such insubordination or misconduct and be subject to dismissal after a hearing pursuant to section 3020-a (see generally, Matter of Radoff v Board of Educ., 99 AD2d 840 [1984], affd 64 NY2d 90 [1984]; Matter of Alderstein v Board of Educ., 96 AD2d 1077 [1983], affd 64 NY2d 90 [1984], supra). In the event that a teacher unjustifiably fails to accept a reassignment, a claim for which the teacher may otherwise have had to continued salary may be barred (see, Matter of Alderstein v Board of Educ., 96 AD2d 1077, supra, citing Matter of MacDonald, Comm decision No. 10912 [Sept. 16, 1982]).
In the case at bar, the teacher appeared for his reassignment and continued to do so for some nine months before he was ordered to leave the district office and no longer report to work upon the allegation that his work on the curriculum was inadequate. The charges filed against the teacher do not include any charges with respect to his work performance during the reassignment and no supplemental charges to that effect were filed. Where, as here, the teacher is sent home from the reassignment and directed not to return to work the teacher cannot then have his salary withheld during the period of suspen *577 sion pending hearing and determination of the disciplinary charges filed (see generally, Matter of Antonopoulou v Beame, 32 NY2d 126 [1973]; Matter of Boyd v Collins, 11 NY2d 228 [1962]).