■ In the Matter of SCHULTZ MANAGEMENT et al., Appellants-Respondents, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Respondents-Appellants, and SUSAN HARMON et al., Intervening Respondents-Appellants. — Order and judgment, Supreme Court, New York County (Martin Evans, J.), entered September 26, 1983, granting the petition in this CPLR article 78 proceeding which seeks to annul an order of the Board of Standards and Appeals of the City of New York (BSA) that revoked the certificate of occupancy of a building on which petitioners hold mortgages, to the extent of remanding the matter to the BSA for further hearings, is reversed, on the law, without costs, and the petition is dismissed. ¶ Because the certificate of occupancy for premises 48-52/56-60 Beach Street was issued as a result of misrepresentations made by the owner's architect in an application for an alteration permit, the Board of Standards and Appeals, on the application of the Buildings Commissioner and after extensive hearings, revoked the building's certificate of occupancy. The alteration application represented that the subject premises consisted of two buildings, each with a lot coverage of less than 5,000 square feet and was therefore convertible, as of right, into loft dwellings, in accordance with the applicable zoning regulation. That regulation provides in pertinent part that: — "Within Area B1 and Area B2 loft dwelling and joint living-work quarters for artists shall not be permitted in buildings where the lot coverage exceeds 5,000 square feet." The premises in fact is one building with a lot coverage of 12,472 square feet. ¶ Petitioners, Schultz Management (Schultz) and Samuel Cooper (Cooper), are mortgagees who separately and allegedly in good faith, purportedly in reliance upon the certificate of occupancy, loaned money to Dundee Equity Corp. (Dundee), the owner of the premises, and another. Those loans are secured in part by mortgages on these premises. Parkdale Realty (Parkdale) similarly purported in reliance upon the certificate of occupancy, entered into a joint venture with Dundee, investing $1,000,000 to purchase a one-half interest in the premises, secured by a mortgage in that amount. ¶ Petitioners argue that, pursuant to subdivision 5 of section 301 of the Multiple Dwelling Law, they have an

irrevocable vested right to the continuance of the certificate of occupancy, because they are persons who relied upon the certificate of occupancy and "in good faith [loaned] money upon the security of a mortgage covering" the premises. Moreover, they contend, due process required that they, as persons with vested interests in the property, be given notice of and an opportunity to be heard at the revocation hearings. Petitioners conclude that since section 645 (subd [b], par [3], cl e) of the New York City Charter does not mandate that notice of the revocation application be given to mortgagees such as themselves, it is unconstitutional. ¶ Respondents counter with the argument that subdivision 5 of section 301 of the Multiple Dwelling Law is inapplicable to safeguard the interests of persons such as petitioners, where the revocation of the certificate of occupancy is based upon a violation of a Zoning Resolution, and thus they are not entitled to notice under section 645 (subd [b], par [3], cl e) of the City Charter. Moreover, say respondents, the revocation of the certificate of occupancy does not affect petitioners' property interest so as to give rise to constitutionally protected due process requirements of notice and an opportunity to be heard, but that in any event, petitioners not only had actual notice of the revocation proceeding, Parkdale and Schultz participated in the hearings by submitting affidavits supporting Dundee in opposing the revocation. ¶ Special Term held that because the issue of whether or not petitioners were good-faith mortgagees who relied on the certificate of occupancy in making loans to Dundee was one of the issues to be determined by BSA, it was error to have failed to formally notify them of the hearings. Accordingly, Special Term remanded the matter to BSA for further hearings, with an opportunity to petitioners to submit proof of their good-faith reliance and to fully participate. Special Term's determination is based upon the conclusion that in the circumstances of this case, subdivision 5 of section 301 of the Multiple Dwelling Law protects those purchasers or mortgagees who in good faith relied upon the certificate of occupancy when obtaining their interest, and that due process requires that they have formal notice of the hearing and an opportunity to establish their good faith. We disagree and dismiss the petition. ¶ Subdivision 5 of section 301 of the Multiple Dwelling Law provides: "A certificate * * * may be relied upon by every person who in good faith purchases a multiple dwelling or who in good faith lends money upon the security of a mortgage covering such a dwelling. Whenever any person has so relied upon such certificate, *no claim that such dwelling had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter* shall be made against such person or against the interest of such person in a multiple dwelling to which such a certificate * * * has been issued." (Emphasis added.) ¶ Petitioners contend that the issuance of the certificate of occupancy establishes, pursuant to subdivision 1 of section 301, that the "dwelling conforms in all respects to the requirements of this chapter, to the building code and rules and to all other applicable law" and therefore that they are protected from revocation of the certificate of occupancy by subdivision 5 of section 301. This reliance upon subdivision 1 of section 301 is misplaced. Significantly, while subdivision 1 of section 301 prohibits occupancy of a multiple dwelling in the absence of a certificate that the "dwelling conforms in all respects to the requirements of *this chapter, to the building code and rules and to all other applicable law*", subdivision 5 of section 301 only protects purchasers and lenders against claims that prior to the issuance of the certificate of occupancy, the dwelling "ha[s] not * * * conformed in all respects to the provisions of *this* chapter". (Emphasis added.) Omitted from subdivision 5 of section 301 is the additional language found in subdivision 1 of section 301: "to the building code and rules and to all other applicable law". ¶ It is a basic rule of statutory construction that "where the statutory language is clear and unambiguous, the court should

construe the statute to give effect to the plain meaning of the words used [citations omitted]" (*Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345). Moreover, where the "statute describes the particular situations in which it is to apply, 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded' (McKinney's Cons Laws of NY, Book 1, Statutes, § 240)" (*Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208-209; *Eaton v New York City Conciliation & Appeals Bd., supra*). Thus, in limiting the reference in subdivision 5 of section 301 of the Multiple Dwelling Law to "the provisions of this chapter", the Legislature cannot be said to have intended to protect the interests of purchasers and lenders in the continuation of the certificate of occupancy where the dwelling in respect to which it was issued does not conform "to all other applicable law" (§ 301, subd 1), here, the Zoning Resolution. If the Legislature had intended otherwise it could have said so "through appropriately worded legislation". Here, the revocation is based not upon a failure of the building to conform to the provisions of "this chapter", the Multiple Dwelling Law, but rather its failure to conform to the Zoning Resolution. ¶ Petitioners' arguments that they were denied their constitutionally protected due process right to notice and an opportunity to be heard, and that section 645 (subd [b], par [3], cl e) of the City Charter is unconstitutional in that it does not mandate notice of the possible revocation of a certificate of occupancy to mortgagees who have vested rights under subdivision 5 of section 301 are without merit and are rejected. ¶ Initially, it should be observed that "[a] statute is presumptively constitutional and should be construed in such a manner as to uphold its constitutionality (McKinney's Statutes, § 150)". (*Eaton v New York City Conciliation & Appeals Bd., supra,* p 346.) Moreover, "[t]he party alleging unconstitutionality [of a statute] has a heavy burden, one of demonstrating the infirmity beyond a reasonable doubt, and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality." (*Sgaglione v Levitt,* 37 NY2d 507, 515 [Cooke, J., dissenting opn].) ¶ Petitioners have failed to sustain their burden of demonstrating the unconstitutionality of section 645 (subd [b], par [3], cl e) of the City Charter beyond a reasonable doubt. As pointed out above, they have no protected right under subdivision 5 of section 301 and they have failed to demonstrate that they have any right or property interest in the continuation of the certificate of occupancy for the subject premises that would give rise to a constitutionally protected right to notice and an opportunity to be heard. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state laws — rules or understanding that secure certain benefits and that support claims of entitlement to those benefits". (*Board of Regents v Roth,* 408 US 564, 577.) Petitioners' reliance upon *Mennonite Bd. of Missions v Adams* (462 US 791, 103 S Ct 2706) is misplaced. There the Indiana statute provided for the sale of properties on which there were delinquent taxes. The purchaser could, if the property were not redeemed by the owner or mortgagees within the prescribed time period, acquire an estate in fee simple in the property, free and clear of all liens and could bring suit to quiet title, thus extinguishing entirely the interests of others in the property. The only notice of the proposed sale that the statute required was the posting of a notice in the county courthouse, publication of the notice for three consecutive weeks and notice by certified mail to the owner at his last known address. At the time of the tax sale in question, no notice was required to be given to a mortgagee. The Supreme Court held (with three Justices dissenting) that the statute failed to comport with the duty of a State to provide " 'notice reasonably calculated, under all circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections'" prior to taking "an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment" (462 US, at p ___, 103 S Ct, at p 2709). No such drastic result of extinguishing the mortgagees' interests in these premises results from the revocation of this certificate of occupancy pursuant to section 645 (subd [b], par [3], cl e) of the City Charter. Concur — Sandler, Sullivan and Alexander, JJ.

Kupferman, J. P., and Kassal, J., dissent in a memorandum by Kupferman, J. P., as follows: I would affirm for the reasons stated by the Justice at Special Term. ¶ This CPLR article 78 proceeding concerns the rights of mortgagees of certain Manhattan premises containing residential loft units to be heard on the question of the continuance of a certificate of occupancy which had been issued on the basis of inaccurate representations by the architects as to the qualifications of the premises for a certificate as of right. The alleged misrepresentations pertain to the actual lot size and whether the premises consists of two buildings or one. ¶ The petitioners mortgagees contend that subdivision 5 of section 301 of the Multiple Dwelling Law affords them a vested right to the continuance of the certificate of occupancy inasmuch as they relied on the certificate in lending the money. They argue further that the revocation of the certificate ordered by the Commissioner of Buildings and confirmed by the Board of Standards and Appeals (BSA) reduces the value of their security by subjecting the premises to the provisions of article 7-C of the Multiple Dwelling Law, which includes rent regulation and subjection to the jurisdiction of the Loft Board. ¶ Special Term dismissed the landlord's petition but granted the petition of the mortgagees only to the extent of annulling the revocation and remanding the matter to the BSA for further hearings. The reason stated by Special Term for its order was that the mortgagees had not been given notice of the pendency of the proceedings before the BSA and an opportunity to participate therein. Special Term did not consider the merits of the mortgagees' underlying claim but merely relied on due process grounds. ¶ Under the circumstances, the value of the premises is clearly diminished by revocation of the certificate of occupancy. This is especially true in light of the alleged intention of the owner to convert the premises into cooperative ownership, which conversion would be greatly facilitated by the existence of a certificate of occupancy. ¶ Thus, the BSA proceeding affected a significant property right of the mortgagees entitling them to notice and an opportunity to be heard. (See *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152, 163; cf. *Mennonite Bd. of Missions v Adams,* 462 US 791, ___, 103 S Ct 2706, 2711.) ¶ No prejudice can result from Special Term's order directing that further hearings be held.