■ In the Matter of MALNUET REALTY CORP., Appellant, v CITY OF NEW YORK et al., Respondents.—Judgment of the Supreme Court, New York County (Shirley Fingerhood, J.), entered February 23, 1988, which dismissed petitioner's CPLR article 78 proceeding, unanimously reversed, on the law, without costs, petition granted and the resolution of respondent Board of Standards and Appeals dated March 3, 1987 vacated.

Petitioner is the owner of a five-story building formerly used for manufacturing purposes. On August 31, 1981, respondent Department of Buildings issued a certificate of occupancy to the prior owners for the subject premises which included four class A apartments located on the third, fourth and fifth floors. These apartments were leased by the prior owners to respondents Markel Berger and Joan Snyder pursuant to a lease which expired on June 30, 1982. Berger and Snyder resided in two of the apartments and subleased the other two to subtenants.

Petitioner acquired the building on January 31, 1983, subsequent to the expiration of the lease issued to respondent tenants. In conjunction with its purchase of the building, petitioner ordered a title search, which disclosed the existence of the certificate of occupancy issued August 31, 1981. The title report further included a search for violations issued against the structure, which was returned by the Buildings Department stamped "No Violations Pending, Building Division, Apr. 16, 1982." The updated title report at the time of the closing similarly showed the certificate of occupancy and no pending violations.

Within about one month after closing title, petitioner served respondents Berger and Snyder and their subtenants with 30-day notices to terminate their month-to-month tenancies. Berger and Snyder then brought an action in Supreme Court, New York County, to enjoin petitioner from instituting holdover proceedings against them, and petitioner interposed a counterclaim in ejectment. Thereafter, in May 1983, the tenants initiated administrative proceedings before the Buildings Department to revoke the certificate of occupancy issued in August 1981 and thereby bring the premises within the ambit of article 7-C of the Multiple Dwelling Law (the Loft Law). Upon the determination of the Deputy Commissioner of the Buildings Department that there was no basis for revocation of the certificate of occupancy, the tenants appealed to the Board of Standards and Appeals, alleging that various violations existed in the premises at the time the certificate was issued. Without providing petitioner notice of the proceedings pending before it, the Board issued a resolution, adopted July 23, 1985, granting the tenants' appeal. Petitioner applied to reopen the proceedings in March 1986, alleging that it first learned of the Board's action when, in opposition to its motion for summary judgment in the Supreme Court action, the tenants attached a copy of the resolution to their answering papers. Thereafter, on September 16, 1986, the Board granted the application to afford petitioner the opportunity to appear in opposition to the tenants' administrative appeal. In a resolution dated March 3, 1987, the Board upheld its earlier resolution of July 23, 1985, granting the tenants' appeal and revoking the certificate of occupancy. Petitioner then instituted a proceeding pursuant to CPLR article 78, seeking to annul the Board's determination, alleging that its action was ultra vires.

Petitioner asserts that the Board should be precluded from revoking the certificate of occupancy on the equitable grounds

of laches and estoppel. Petitioner states that it relied upon the certificate in purchasing the subject premises. It contends that it will suffer irreparable injury if the premises become subject to the Loft Law (Multiple Dwelling Law art 7-C) which would limit rents pursuant to the Rent Stabilization Law and thereby render the value of the premises substantially less than what petitioner paid for them. It further asserts that the tenants' delay of nearly two years after the certificate's issuance in initiating revocation proceedings constitutes laches.

Multiple Dwelling Law § 301 (5) provides: "A certificate, a record in the department or a statement signed by the head of the department that a certificate has been issued, may be relied upon by every person who in good faith purchases a multiple dwelling or who in good faith lends money upon the security of a mortgage covering such a dwelling. Whenever any person has so relied upon such a certificate, no claim that such dwelling had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter shall be made against such person or against the interest of such person in a multiple dwelling to which such a certificate applies or concerning which such a statement has been issued."

Petitioner is clearly a purchaser within the meaning of Real Property Law § 290 (2). Furthermore, even if it is assumed, arguendo, that petitioner's predecessor fraudulently obtained the certificate, it is not disputed that petitioner acquired the premises for valuable consideration and without notice of any violation which might bear upon the validity of the certificate of occupancy. Therefore, any fraud on the part of petitioner's predecessor will not impair petitioner's interest in the property (Real Property Law § 266).

The basis of the tenants' appeal before the Board was the asserted failure of the premises to conform to the requirements of the Multiple Dwelling Law at the time the certificate was issued. The law, however, expressly precludes any claim that the "dwelling had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter" (Multiple Dwelling Law § 301 [5]). Respondent Board of Standards and Appeals was therefore without authority to revoke the certificate of occupancy *(Matter of Edwards v Murdock,* 283 NY 529).

The cases relied upon by the tenants, *Matter of Parkview Assocs. v City of New York* (71 NY2d 274) and *Matter of Schultz Mgt. v Board of Stds. & Appeals* (103 AD2d 687, *affd*

64 NY2d 1057), are not to the contrary. *Parkview Assocs.* involves a building permit, not a certificate of occupancy, and falls within the purview of section 300 (not § 301) of the Multiple Dwelling Law. There is no question that an invalid building permit invests no rights upon the owner and is subject to revocation *(Matter of Ramundo v Murdock,* 265 App Div 526). *Schultz Mgt. (supra),* which does concern a certificate of occupancy, is distinguishable from the matter under review. In that case, this court emphasized the distinction to be drawn between a certificate which contravenes the requirements of the Multiple Dwelling Law and one which violates other applicable laws. Section 301 (5) bars only claims that, prior to the issuance of the certificate of occupancy, the subject dwelling failed to conform "to the provisions of this chapter" (viz., the Multiple Dwelling Law) and does not bar claims that it failed to comply with other laws, such as applicable zoning regulations (103 AD2d 687, 689, *supra).* In the instant matter, the tenants' attack upon the validity of the certificate was exclusively based upon conditions extant at the time of issuance which are alleged to abrogate provisions of the Multiple Dwelling Law, and the owner is therefore within the ambit of the statute.

In view of the conclusion that this matter is governed by express statutory provisions, it is unnecessary to reach petitioner's equitable arguments. Concur—Kupferman, J. P., Ross, Rosenberger, Smith and Rubin, JJ.