OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 89-1003 |
| of | : | |
| | : | OCTOBER 4, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE DAVID G. KELLEY, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the city council of a general law city provide for its members during their current terms of office a prepaid whole life insurance policy which would provide a member upon resignation or termination a direct and immediate cash benefit?

CONCLUSION

The city council of a general law city may provide for its members during their current terms of office a prepaid whole life insurance policy which would provide a member upon resignation or termination a direct and immediate cash benefit, provided that such benefits are available to a large number of the city's employees.

ANALYSIS

We are advised that the city council of a general law city proposes by ordinance to provide to the council members a prepaid $50,000 whole life insurance policy which would provide a member upon resignation or termination a direct and immediate cash benefit. The cash benefit, consisting of the cash value of the policy at the time of termination, would depend presumably upon such factors as age and time in service, and could possibly, in a particular case, be as much as $20,000. We are asked with respect to council members whether the change may take effect during their current terms of office.

Government Code section 36516 provides for the salary and compensation of city council members:

"(a)     A city council may enact an ordinance providing that each member of the city council shall receive a salary, the amount of which shall be determined by the following schedule:

1.                                                                                        89-1003

"(1)     In cities up to and including 35,000 in population, up to and including three hundred dollars ($300) per month;

"(2)     In cities over 35,000 up to and including 50,000 in population, up to and including four hundred dollars ($400) per month;

"(3)     In cities over 50,000 up to and including 75,000 in population, up to and including five hundred dollars ($500) per month.

"(4)     In cities over 75,000 up to and including 150,000 in population, up to and including six hundred dollars ($600) per month.

"(5)     In cities over 150,000 up to and including 250,000 in population, up to and including eight hundred dollars ($800) per month.

"(6)     In cities over 250,000 population, up to and including one thousand ($1,000) per month.

"For the purposes of this section the population shall be determined by the last preceding federal census, or a subsequent census, or estimate validated by the Department of Finance.

"(b)     At any municipal election, the question of whether city council members shall receive compensation for services, and the amount of compensation, may be submitted to the electors.  If a majority of the electors voting at the election favor it, all of the council members shall receive the compensation specified in the election call.  Compensation of council members may be increased beyond the amount provided in this section or decreased below the amount in the same manner.

"(c)     Compensation of council members may be increased beyond the amount provided in this section by an ordinance or by an amendment to an ordinance but the amount of the increase may not exceed an amount equal to 5 percent for each calendar year from the operative date of the last adjustment of the salary in effect when the ordinance or amendment is enacted.  No salary ordinance shall be enacted or amended which provides for automatic future increases in salary.

"(d)     Any amounts paid by a city for retirement, health and welfare, and federal social security benefits shall not be included for purposes of determining salary under this section provided the same benefits are available and paid by the city for its employees."

Under subdivision (a) of this section, the amount of salary is specifically limited.  Under subdivision (c), the amount of compensation may be increased by ordinance beyond the limits of subdivision (a) provided that it does not result in an increase in excess of an increase in excess of an amount equal to 5 percent for each calendar year from the operative date of the last adjustment of the salary in effect when the ordinance was enacted.  Under subdivision (d), however, a city may provide to the members of its legislative body health and welfare benefits *without regard* to the limitations contained in subdivisions (a) or (c) of that section, provided that any such benefits granted to such members must also be made available to and paid by the city for its employees.  Section 36516.5 provides another limitation:

"A change in compensation does not apply to a councilman during his term of office; however, the prohibition herein expressed shall not prevent the adjustment of the compensation of all members of a council serving staggered terms whenever one or more members of such council becomes eligible for a salary increase by virtue of his beginning a new term of office."

Consequently, additional benefits[1] may be granted during a member's current term only if granted to all members serving staggered terms when one or more begins a new term.

A different statutory scheme, Government Code section 53200, et seq., also provides for health and welfare benefits for the officers and employees of a city. The principal section, 53201, provides as follows:

"(a)    The legislative body of a local agency, subject to such conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that such charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by Government Code Section 53205.

"(b)    The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits."

With respect to this statute, the term "local agency" includes a city; the term "legislative body" includes a city council; the phrase "health and welfare benefits" includes life insurance; and the word "employees" includes members of the city council. (§ 53200, subds. (a), (c), (d), and (e), respectively.) Section 53205 provides in part:

"From funds under its jurisdiction, the legislative body may authorize payment of all, or such portion as it may elect, of the premiums, dues, or other charges for health and welfare benefits of officers, employees, retired employees, former elective members specified in subdivision (b) of Section 53201, and retired members of the legislative body subject to its jurisdiction."

Finally, section 53208 provides as follows:

"*Notwithstanding any statutory limitation upon compensation* or statutory restriction relating to interest in contracts entered into by any local agency, *any member of a legislative body may participate* in any plan of health and welfare benefits permitted by this article." (Emphasis added.)

The words "Notwithstanding any statutory limitation upon compensation," in the latter section, are words of supersession with respect to any inconsistent provision. (Cf. *In re*

---

[1]"Compensation" within the meaning of section 36516.5 includes benefits. (67 Ops.Cal.Atty.Gen. 467 (1984).)

*Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3, and *State of California* v. *Superior Court* (1967) 252 Cal.App.2d 637, 639, construing the phrase "notwithstanding any other provision of law" to have the effect of making the statute containing it controlling over pertinent provisions in other laws; 61 Ops.Cal.Atty.Gen. 424, 430 (1978).)  Hence, to the extent that participation by a council member in a health and welfare plan is permitted under section 53208, any inconsistent limitations in sections 36516 and 36516.5, *supra*, are inapplicable.[2]  In 54 Ops.Cal.Atty.Gen. 124 (1971), we determined that section 53208 permitted the directors of a soil conservation district to participate in a major medical insurance plan notwithstanding a statute providing that such directors "...shall receive no compensation for their services . . . ." (*Id.* at 125.)  Similarly, county supervisors, auditors, and district attorneys are eligible for health and welfare benefits notwithstanding a statute providing that their salaries ". . . are in full compensation for the services required of them . . . by virtue of their offices."  (38 Ops.Cal.Atty.Gen. 116, 117 (1961).)

A specific limitation does arise under section 53202.3, which provides in pertinent part that "All plans, policies, or other documents used to effectuate the purposes of this article shall provide benefits for large numbers of employees. . . ."  Consequently, such benefits under this statutory scheme are not available to council members unless they are also available to *large numbers* of city employees.  The latter section further provides that "No plan or policy may be approved . . . unless its issuance or the payment of benefits thereunder is otherwise lawful in this State. . . ."  It is assumed, accordingly, that the benefits in question would be provided under a policy which complies with the applicable provisions of the Insurance Code.  Any such policy would contain a provision for the payment upon its surrender of a cash value. (Ins. Code, § 10160, subd. (d).)  While we have not been apprised of the proposed policy specifications, we perceive no necessary inconsistency with the provisions, including the minimum number and percentage of insured, pertaining to group life insurance for employees.  (Ins. Code, § 10202.)

Subject to those constraints, however, section 53201, *supra*, permits a city council to provide benefits for its *members* and *retired members* (subdivision (a)), and to provide for the continuation of benefits for certain *former elective members* (subdivision (b).)[3]  However, the total cost of the benefit in question is paid by the city during the member's term of office.  Consequently, while the benefit may be realized after termination, it is immaterial whether a participating member falls within the definition of a retired member or satisfies the conditions for participation by a former elective member.  Since the benefit was conferred during the term of office, it is fully authorized as a benefit for an incumbent member.

Nor does the fact that the benefit may be realized after termination raise a substantial constitutional issue.  Specifically, article IV, section 17 of the California Constitution provides:

> "The Legislature has no power to grant, or to authorize a city, county, or other public body to grant, extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or to authorize the payment of a claim against the State or a city, county, or other public body under an agreement made without authority of law."

---

[2]In addition, any limitation in Government Code section 1090, prohibiting council members from being financially interested in any contract made by them in their official capacity (*Thomson* v. *Call* (1985) 38 Cal.3d 633) is inapplicable.

[3]The nature of a "retired" member, as distinguished from a former elective member, was analyzed in 62 Ops.Cal.Atty.Gen. 631, 633 (1979).

California Constitution, article XI, section 10, subdivision (a) provides:

> "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law."

(See also 65 Ops.Cal.Atty.Gen. 66, 68 (1982); 63 Ops.Cal.Atty.Gen. 633, 638 (1980).) The grant in question, i.e., the payment of the whole life premium, was made prior to the termination of office. In this respect, the benefit to be realized at a later date is, not unlike a pension benefit (see *California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 139), simply another form of deferred compensation. Based on the fundamental premise that such deferred compensation as inducement for continued service becomes contractually vested (*Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863, 866), it may not be discontinued. (67 Ops.Cal.Atty.Gen. 510, 513 (1984).)

A constitutional issue does, however, arise by virtue of the payment of the premium *during* the member's term of office, i.e., after the ". . . contract has been entered into and performed in whole or in part . . ." within the meaning of the foregoing constitutional provisions.

We have previously observed that the constitutional proscriptions referred to above do not apply where a compensation adjustment is made retroactive to a date at which such compensation was indefinite or uncertain. (65 Ops.Cal.Atty.Gen. 66, 69-70 (1982).) In this regard, the court in *San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83, 88, stated in part:

> "On the issue of whether retroactive pay raises are unconstitutional per se, there is a paucity of case law but the subject has been the focal point of several Attorney General opinions. These opinions were not rendered as esoteric discussions of legal philosophies. Rather they were answers given to inquiring governmental agencies confronted with the day-to-day operation of government and are therefore to be given weight as being contemporaneous administrative interpretations. (*Mantzoros* v. *State Bd. of Equalization* (1948) 87 Cal.App.2d 140; 3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1825.) These opinions (23 Ops.Cal.Atty.Gen. 271; 33, p. 143; 39, p. 200; 47, p. 61) hold that the granting of retroactive pay raises under the circumstances recited therein did not constitute a violation of either article XIII, section 25 (forbidding gifts of public funds) or article IV, section 17 (forbidding extra compensation for past services) of the California Constitution. The Attorney General opinions rely upon the fact that in each instance the adjusted salary rates were made retroactive to a date at which the salary rates were indefinite and subject to future determinations."

(See also *Gai* v. *City Council* (1976) 63 Cal.App.3d 381, 390; *Goleta Educators Assn.* v. *Dall' Armi* (1977) 68 Cal.App.3d 830, 833.) In each of these cases the operative facts were that the salary levels of groups or classes of employees were uncertain or indefinite during the period of negotiation or settlement procedure. In *San Joaquin*, for example, the period of negotiation under the Meyers-Milias-Brown Act, Government Code section 3500 *et seq*., commenced or continued upon the expiration date of the existing salary ordinance. In *Gai*, a pay increase already negotiated by collective bargaining agreements remained subject to approval by the federal Construction Industry Stabilization Committee. In *Goleta Educators*, the compensation rates were, for all practical purposes, suspended for the duration of contract negotiations. Finally, in *Jarvis* v. *Cory* (1980) 28 Cal.3d 562, 570-572, the Supreme Court concluded that state employees' salary levels, although not

then subject to any collective bargaining process, were a matter of legitimate, on-going dispute and uncertainty under the extraordinary circumstances of fiscal year 1978-1979, and could therefore be retroactively adjusted without offense to the Constitution.

An "uncertainty" may also arise by virtue of the reservation of certain rights or prerogatives in the employment contract itself. The employment relationship between a city council member and the city is, of course, contractual, and the elements of compensation for such an office become contractually vested upon acceptance of employment. (Cf. *Olson* v. *Cory* (1980) 27 Cal.3d 532, 538-539, n. 3; *Betts* v. *Board of Administration, supra*, 21 Cal.3d at 863; and see 67 Ops.Cal.Atty.Gen. 510, 512 (1984).)

As applied to such a contract, the Constitution is violated where salary increases are granted in the absence of such a right having been retained by appropriate provision in the contract. (Cf. *Stewart* v. *Eaves* (1927) 84 Cal.App. 312, 319; 53 Ops.Cal.Atty.Gen. 16, 19 (1970).) In the latter opinion it was determined, in the absence of any such provision, that a school board was prohibited from granting a salary increase to a certificated employee after a contract for a fixed amount had been entered into and performed in whole or in part. In *Johnston* v. *Rapp* (1951) 103 Cal.App.2d 202, on the other hand, it was held that a school board could, at the end of the first of a four year contract, increase the salary of its school superintendent for the ensuing year because the contract, although it specified an annual salary, reserved to the board the power to increase the salary during the term of the contract. The court found that the salary increase did not violate the Constitution. (*Id.* at 205; see also 33 Ops.Cal.Atty.Gen. 143, 144 (1959); 23 Ops.Cal.Atty.Gen. 271, 274 (1954); 8 Ops.Cal.Atty.Gen. 146, 147 (1946).)

In addition to those provisions expressly contained within a contract, certain others may be deemed included as a matter of law. It is, for example, a general rule that all applicable laws and ordinances in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated. (*Alpha Beta Food Markets* v. *Retail Clerks* (1955) 45 Cal.2d 764, 771; *Cappelmann* v. *Young* (1946) 73 Cal.App.2d 49, 52.) It has also been held that the rules and regulations of a public agency in effect at the date of the making or renewal of a contract of employment, are integral parts of it. (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 443.) Hence, we have concluded that a school board could, based upon specific statutory sanction (see now Ed. Code, §§ 45032 and 87806), grant a salary increase to a certificated employee after a contract for a fixed amount had been entered into and partially performed. (53 Ops.Cal.Atty.Gen., *supra*, 20.) It would follow that if the amount of compensation remains uncertain, *whether by contract or by law*, a subsequent determination or adjustment would not constitute *extra* compensation. Accordingly, we have observed that extra compensation is compensation over and above that fixed by contract or by law when the services are rendered. (*Mahon* v. *Board of Educ. etc.* (1902) 171 N.Y. 263, 266, 63 N.E. 1107, 1108; 33 Ops.Cal.Atty.Gen. 143, 145 (1959).) Under that rationale, the only remaining issue would be whether the option to augment the compensation or benefits of a member were retained as a matter of law.

We have also stated, in any event, that where there is an *arrangement* either contractual or *prescribed by law* whereby the salary rates for public employees are not fixed during a period in which further adjustments are contemplated, the constitutional prohibition against payment of extra compensation does not apply. (47 Ops.Cal.Atty.Gen. 61, 62 (1966); 39 Ops.Cal.Atty.Gen. 200, 202 (1962).) In the latter opinion, for example, it was determined that the retroactive adjustment of state salaries pursuant to the following statutory arrangement (now Government Code section 19826) did not violate the constitutional limitation:

"The [Department of Personnel Administration] shall establish and adjust salary ranges for each class of position in the state civil service. . . . In establishing or changing such ranges consideration shall be given to the prevailing rates for comparable service in other public employment and in private business. . . ."

In that case, the statutory arrangement provided for salary increases based on prevailing rates in other public and private employment.

The question remains whether the benefit increase under consideration is based on any such arrangement. As previously noted, section 36516.5 provides that a change in compensation may not apply during a member's term of office, provided that a change may apply to all members serving staggered terms whenever one or more begins a new term. In our view, however, this limitation, insofar as it pertains to health and welfare benefits, has been superseded by section 53208, *supra*, providing that *any member of a legislative body may participate in any plan of health and welfare benefits permitted under this article*, notwithstanding any other statutory limitation.

Under section 53201, subdivision (a), of that article, the city council may, *subject to such conditions as may be established by it, provide for any health and welfare benefits for its officers and employees, including its members.* Any such benefit must, however, be available to large numbers of the city's employees. (§ 53202.3, *supra*.) Thus, the statutory arrangement clearly contemplates the participation by members in any plan extending to a large number of the city's employees. Inasmuch as the availability of participation by members in any such plan is identified with that of the city's employees, the constraints applicable to members are subject to, but no more restrictive than those applicable to such employees.

Finally, in *Johnston* v. *Rapp, supra*, 103 Cal.App.2d at 207, the court addressed the constitutional restriction against gifts of public funds:

"The argument that the compensation voted to petitioner Johnston is a gift of public money is without merit. As was said in *California Emp. etc. Com* v. *Payne,* 31 Cal.2d 210, 216:

"`It is well settled, however, that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of [now section 6 of article XVI] of the Constitution if those funds are expended for a public purpose, which is a matter primarily for legislative discretion. (*County of Alameda* v. *Janssen* 16 Cal.2d 276, 281.)'

"The increased salary voted to petitioner was for services to be rendered for a public purpose and in no sense a `gift' within the meaning of [now section 6, article XVI] of the Constitution. . . ."

(See also 44 Ops.Cal.Atty.Gen. 114, 115-116 (1964); 39 Ops.Cal.Atty.Gen. 200, 201 (1962).)

In the latter opinion we observed that "The efficiency, retention and recruitment of public employees are directly related to rates of pay and funds expended therefor serve a public purpose." We do not mean to suggest that every bonus or benefit no matter how great would as a matter of principle be "directly related" to the efficiency of the public service. At some point, a court may determine that an inordinate benefit conferred, for example, during the final week of a council member's term, would bear no such rational relationship, and would constitute a gift of public funds. We are presented, however, with no specific applications, and conclude generally that it would not be unconstitutional per se for the city council of a general law city to provide for its

members during their current terms of office a prepaid whole life insurance policy, provided that such benefits are available to a large number of the city's employees.

* * * * *