TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

<table>
<tr><td>OPINION</td><td>:</td><td rowspan="6">No. 93-613<br><br>February 17, 1994</td></tr>
<tr><td>of</td><td>:</td></tr>
<tr><td>DANIEL E. LUNGREN<br>Attorney General</td><td>:</td></tr>
<tr><td>ANTHONY S. Da VIGO<br>Deputy Attorney General</td><td>:</td></tr>
</table>

THE HONORABLE BOB EPPLE, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a school board grant fully paid health and welfare benefits to age 65 to its former elective members who have served at least 12 years on the board after January 1, 1981?

CONCLUSION

A school board may grant fully paid health and welfare benefits to age 65 to its former elective members who have served at least 12 years on the board after January 1, 1981, if such benefits are a continuation of a grant made or in effect during the members' respective terms of office and the benefits are provided to large numbers of the school district's employees.

ANALYSIS

The inquiry presented concerns the authority of a school board to provide health and welfare benefits to its former elective members. We are asked to focus upon certain statutory prohibitions against public officials having conflicts of interest and certain constitutional prohibitions against the granting of "extra compensation" to a government officer. We conclude generally that a school board has the authority to provide such benefits.

The granting of health and welfare benefits to present and "retired" members, as well as to former elective members of a legislative body of a local agency, is expressly authorized by section 53201 of the Government Code.[1] Subdivisions (a) and (b) of section 53201 state:

---

[1]Hereafter, unidentified section references are to the Government Code.

"(a) The legislative body of a local agency, subject to conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that the charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by Government Code Section 53205.

"(b) The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits."

Within the meaning of section 53201, the term "local agency" includes a school district, a "legislative body" includes a school board, and "employees" includes members of a school board. (§ 53200, subds. (a), (c), (e).)

The present inquiry centers upon the relationship of section 53201 to two statutes and two provisions of the Constitution. It will thus be assumed for purposes of our discussion that no issue arises in connection with the conditions or limitations of section 53201 itself. Hence, in question are (1) former elective members who have served at least 12 years on a school board after January 1, 1981, and (2) benefits which are a continuation of a grant made or in effect during the members' terms of office. Further, pursuant to the express limitations of section 53202.3,[2] it will be assumed that the benefits are provided to large numbers of the school district's employees. (See 73 Ops.Cal.Atty.Gen. 296, 300 (1990).)

With respect to statutory prohibitions against state and local public officials having conflicts of interest, the primary legislative scheme is the Political Reform Act of 1974 (§§ 81000-91015). Section 87100 provides the relevant prohibition:

"No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

However, excluded from the definition of "income," and hence from consideration as a "financial interest" (§ 87103, subd. (c)), is an official's own salary and compensation received from the public agency (§ 82030, subd. (b)(2); Cal. Code Regs., tit. 2, § 18702.2, subd. (c)(1)). Hence, we need not be concerned with the proscription of section 87100 when analyzing the grant of authority contained in section 53201.

The other statutory provision requiring examination is section 1090. This statute, expressly made applicable to school boards (Ed. Code, § 35233), restricts the authority of a public

---

[2]Section 53202.3 states: "All plans, policies, or other documents used to effectuate the purposes of this article shall provide benefits for large numbers of employees. No plan or policy may be approved . . . unless its issuance or the payment of benefits thereunder is otherwise lawful in this State. . . ."

agency to enter into contracts due to the financial interests of one or more of its members. Section 1090 states:

> "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."

As between a general statute such as 1090 and a specific statute such as 53201, the more specific provisions would prevail in resolving any apparent inconsistencies. (See *Old Town Dev. Corp.* v. *Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 328-329; 51 Ops.Cal. Atty.Gen. 30, 30-31 (1968); see also *Agricultural Labor Relations Board* v. *Superior Court* (1976) 16 Cal.3d 392, 420.) Moreover, the Legislature has expressly provided in section 53208:

> "Notwithstanding any statutory limitation upon compensation or statutory restriction relating to interest in contracts entered into by any local agency, any member of a legislative body may participate in any plan of health and welfare benefits permitted by this article [§§ 53200-53210]."

Section 53201 authorizes the legislative body of a local agency to provide health and welfare benefits for its members in accordance with prescribed limitations. Obviously, such benefits may be conferred only by and through the official actions of the members of the board for their own benefit. Any perceived conflict between section 1090 on the one hand, and section 53201 on the other, is dispelled by the unequivocal language of section 53208. (See *People* v. *Superior Court (Hubbard)* 230 Cal.App.3d 287, 296; *In re Marriage of Dover* (1971) Cal.App.3d 675, 678, fn. 3; 73 Ops.Cal.Atty.Gen., *supra*, 299.)[3]

We turn next to the two possible constitutional limitations upon the granting of health and welfare benefits to former school board members. Article IV, section 17, of the Constitution provides:

> "The Legislature has no power to grant, or to authorize a city, county, or other public body to grant, extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or to authorize the payment of a claim against the State or a city, county, or other public body under an agreement made without authority of law."

Subdivision (a) of section 10 of article XI additionally states:

> "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law."

---

[3]Special statutes such as sections 53201 and 53208 would not take precedence over section 87100, since the Political Reform Act of 1974 was adopted as an initiative measure by a vote of the people; the latter may only be amended by a vote of the people or as provided in the initiative measure. (Cal. Const., art. II, § 10, subd. (c); § 81013.)

The employment relationship between a school board member and a school district is contractual, and the elements of compensation for such an office become contractually vested upon acceptance of employment. (Cf. *Olson v. Cory* (1980) 27 Cal.3d 532, 538-539, fn. 3; 73 Ops.Cal.Atty.Gen., *supra*, 302.) In our 1990 opinion last cited, we addressed a similar issue as that presented here:

"As applied to such a contract, the Constitution is violated where salary increases are granted in the absence of such a right having been retained by appropriate provision in the contract. (Cf. *Stewart* v. *Eaves* (1927) 84 Cal.App. 312, 319; 53 Ops.Cal.Atty.Gen. 16, 19 (1970).) In the latter opinion it was determined, in the absence of any such provision, that a school board was prohibited from granting a salary increase to a certified employee after a contract for a fixed amount had been entered into and performed in whole or in part. In *Johnson* v. *Rapp* (1951) 103 Cal.App.2d 202, on the other hand, it was held that a school board could, at the end of the first of a four year contract, increase the salary of its school superintendent for the ensuing year because the contract, although it specified an annual salary, reserved to the board the power to increase the salary during the term of the contract. The court found that the salary increase did not violate the Constitution. (*Id.*, at 205; see also 33 Ops.Cal.Atty.Gen. 143, 144 (1959); 23 Ops.Cal.Atty.Gen. 271, 274, (1954); 8 Ops.Cal.Atty.Gen. 146, 147 (1946).)

"In addition to those provisions expressly contained within a contract, certain others may be deemed included as a matter of law. It is, for example, a general rule that all applicable laws and ordinances in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated. (*Alpha Beta Food Markets* v. *Retail Clerks* (1955) 45 Cal.2d 764, 771; *Cappelmann* v. *Young* (1946) 73 Cal.App.2d 49, 52.) It has also been held that the rules and regulations of a public agency in effect at the date of the making or renewal of a contract of employment are integral parts of it. (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 443.) Hence, we have concluded that a school board could, based upon specific statutory sanction (see now Ed. Code, §§ 45032 and 87806), grant a salary increase to a certified employee after a contract for a fixed amount had been entered into and partially performed. (53 Ops.Cal.Atty.Gen., *supra*, 20.) It would follow that if the amount of compensation remains uncertain, *whether by contract or by law,* a subsequent determination or adjustment would not constitute *extra* compensation. Accordingly, we have observed that extra compensation is compensation over and above that fixed by contract or by law when the services are rendered. (*Mahon* v. *Board of Education, etc*. (1902) 171 N.Y. 263, 266, 63 N.E. 1107, 1108; 33 Ops.Cal.Atty.Gen. 143, 145 (1959).) Under that rationale, the only remaining issue would be whether the option to augment the compensation or benefits of a member were retained as a matter of law.

"We have also stated, in any event, that where there is an *arrangement* either contractual or *prescribed by law* whereby the salary rates for public employees are not fixed during a period in which further adjustments are contemplated, the constitutional prohibition against payment of extra compensation does not apply. (47 Ops.Cal.Atty.Gen 61, 62 (1966); 39 Ops.Cal.Atty.Gen. 200, 202 (1962).) In the latter opinion, for example, . . . the statutory arrangement provided for salary increases based on prevailing rates in other public and private employment." (*Id.*, at pp. 302-303.)

Assuming that the benefits in question have not been reserved in an express provision of a contract, our final inquiry is whether the granting of such benefits may be founded upon a particular law or "arrangement." Again, section 53208 provides that "any member of a legislative body may participate in any plan of health and welfare benefits permitted by this article [§§ 53200-53210]," notwithstanding any other statutory limitation. Under sections 53201 and 53202.3, a school board may, subject to such conditions as may be established by it, provide the same health and welfare benefits for its members and officers as it makes available to large numbers of the school district's employees. Section 53201 also authorizes a board to provide for the continuation of such benefits for qualified former elective members.

In 39 Ops.Cal.Atty.Gen. 200 (1962), we determined that a retroactive adjustment of state salaries was sanctioned by a statutory arrangement set forth in section 19826. Similarly, for a school district's employees in their current terms of service, furnishing health and welfare benefits would be sanctioned under the arrangement authorized by section 53201, subdivision (a).

In 73 Ops.Cal.Atty.Gen., *supra*, 304, we noted in connection with a general law city that "[i]nasmuch as the availability of participation by [city council] members in any such plan is identified with that of the city's employees, the constraints applicable to members are subject to, but no more restrictive than, those applicable to such employees." We concluded that the city council could provide for its members during their current terms of office a prepaid whole life insurance policy. (*Ibid*.)

By logical extension, subdivision (b) of section 53201 would fully warrant the *continuation* of benefits for employees, and consequently for qualified former elective members, granted during their terms of employment or office.

It is concluded that a school board may grant fully paid health and welfare benefits to age 65 to its former elective members who have served at least 12 years on the board after January 1, 1981, if such benefits are a continuation of a grant made or in effect during the members' respective terms of office and the benefits are provided to large numbers of the school district's employees.

* * * * *