OPINION OF THE COURT
Thomas P. Phelan, J.
Kevin McElroy is a tenured social studies teacher and former varsity football coach at Wellington C. Mepham High School. *322 Petitioner Arthur Canestro is a tenured physical education teacher and former junior varsity football coach at Mepham High School. Both petitioners traveled with the varsity football team and three other coaches in the summer of 2003 to a football camp where four members of Mepham High’s varsity football team perpetrated criminal acts of violence and sexual abuse against three other football players.
Three perpetrators were suspended from the football team, and then suspended from Mepham High School. Upon learning that many members of the football team had witnessed the assaults and sexual abuse, respondent Board of Education of the Bellmore-Merrick Central High School District cancelled the 2003 football season, and the football coaches (including petitioners) lost their coaching appointments. Petitioners were not appointed as coaches for the 2004 football season.
The grand jury report annexed as exhibit 7 to respondent’s answer (at 1) determined that the assaults appeared to have emanated from a “custom or history of hazing both at the football camp and at Mepham High School itself.” That report further states (at 5), “the coaches displayed a lack of common sense accountability when it came to managing or running the camp . . . The coaching staff as a whole appears to have been more concerned with being coaches of a football team than interested in the well-being of the players as students.” The grand jury did find that the coaches did not have actual knowledge of the physical assaults and sexual abuse.
A hand-delivered letter, on March 24, 2004, requested petitioners to meet that afternoon with the superintendent of schools, Dr. Caramore. At the meetings, each petitioner was “reassigned to the Brookside School until further notice” and advised that “curriculum projects will be assigned to you” (letters from Dr. Caramore to petitioners, Mar. 24, 2004, petition, exhibit B).
By letter dated May 14, 2004, petitioners were advised that they would “continue to be assigned to the Brookside School” in September 2004. The Brookside School is the locale of respondent’s central administrative office.
Petitioners seek a judgment directing respondent to reassign them to classroom duties at Mepham High School and to further enjoin respondent from reassigning petitioners out of classroom duties without notice of charges against them and a hearing.
The reassignment formed the basis of a contractual grievance filed by Bellmore-Merrick United Secondary Teachers’ Union. *323 After the grievance was denied, the union demanded arbitration. A petition to stay arbitration is pending before another justice of this court.
The reassignment is also the subject of this CPLR article 78 proceeding wherein petitioners complain the reassignment violates Education Law §§ 3020 and 3020-a and due process because they are being “deprived of their teaching positions” without being given the reasons for the reassignment and “without a hearing to discuss the reasons for the reassignment” (petition lili 9-15).
All claims of breach of petitioners’ contractual rights have been withdrawn from this proceeding by petitioners (transcript, Aug. 11, 2004, at 5).
The issue presented is whether the reassignment of petitioners constitutes discipline, thereby triggering application of Education Law §§ 3020 and 3020-a.
Education Law § 3020 governs the discipline of teachers and provides that “[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause” and in accordance with statutory procedures. Education Law § 3020-a sets forth those procedures, which includes the filing of charges and the right to a hearing.
Education Law § 3020-a is the exclusive method of disciplining a tenured teacher in New York State (TeBordo v Cold Spring Harbor Cent. School Dist., 126 AD2d 542 [1987], lv denied 70 NY2d 605 [1987]). The purpose of the statute is to protect tenured teachers “from arbitrary imposition of formal discipline. It was not intended to interfere with the day-to-day operation of the educational system ...” (Holt v Board of Educ. of Webutuck Cent. School Dist., 52 NY2d 625, 632 [1981]).
A hearing is required prior to the imposition of a “reprimand, a fine, suspension for a fixed time without pay, or dismissal” (Education Law § 3020-a [4] [a]; TeBordo [critical letters fell short of formal reprimand]). The statute prohibits bringing charges more than three years after the occurrence which is the subject of the charges, except when the charge is a crime (Education Law § 3020-a [1]).
Although the facts are undisputed, the parties vigorously dispute the legal consequences of the facts. Petitioners argue that their reassignment triggers the provisions of the Education Law and due process. Respondent argues that it is in the process of its own ongoing investigation and petitioners were reas *324 signed “in the best interests of the District, in order to enable District representatives to conduct a full and fair inquiry into the surrounding facts and circumstances” (answer 1111 62, 63).
The Board of Education is charged by law with the superintendence, management and control of the educational affairs of the district (Education Law § 1709 [33]).
Neither the attorneys nor this court’s research discloses any case law specifically addressing reassignment of teachers where no charges have been made or disciplinary proceedings begun in the context of teachers’ rights pursuant to Education Law §§ 3020 and 3020-a. The case law is most often concerned with issues following filing of formal charges or suspension or both.
A tenured teacher has a protected property interest in his or her position, which raises due process considerations when a teacher is faced with termination of his or her employment (Matter of Elmore v Plainview-Old Bethpage Cent. School Dist, 273 AD2d 307 [2000]). However, tenure “does not entitle a teacher to a specific class or proscribe assignment to proper duties of a teacher other than classroom teaching of a specific subject” (Matter of Adlerstein v Board of Educ. of City of N.Y., 64 NY2d 90, 99 [1984]).
A “nonteaching assignment at district headquarters, or in other school or district offices, which bears reasonable relationship to the suspended teacher’s competence and training and is consistent with the dignity of the profession, is permissible” (Matter of Adlerstein at 100 [complaints by tenured art teacher and social studies teacher regarding nonteaching reassignments during suspension and pending disciplinary hearings were rejected]; see also Brady v A Certain Teacher, 166 Misc 2d 566 [1995] [tenured teacher reassigned to update curriculum and then directed not to return entitled to salary pending hearing and determination of disciplinary charges filed]).
Where disciplinary proceedings were completed or pending, respectively, discretionary reassignment of a high school science teacher to “nonteaching duties” was not prohibited by Education Law § 3020-a (Matter of Taylor v Hammondsport Cent. School Dist., 267 AD2d 987 [1999]), and reassignment of a school administrator to the district office did not implicate due process concerns (Gray v Crew, 267 AD2d 98 [1999], lv dismissed 95 NY2d 886 [2000]).
Cases involving reassignment of a tenured elementary school teacher as a “floating teacher” (Matter of Mishkoff v Nyquist, *325 57 AD2d 649 [1977], lv denied 43 NY2d 641 [1977]) and reassignment of a mathematics teacher to study hall supervision (Matter of Van Heusen v Board of Educ. of City School Dist. of Schenectady, 26 AD2d 721 [1966]) have been upheld as proper without any mention of the commencement of disciplinary proceedings.
Lateral reassignments of permanent employees in other statutorily protected fields of employment, where there has been no change in job title, salary or benefits, have been sustained as a matter of administrative discretion not warranting a hearing under the Civil Service Law (Matter of Galatti v County of Dutchess, 64 NY2d 1163, 1165 [1985] [change in position from division head to director of continuing services held not a demotion requiring a hearing]; Matter of Barresi v Mahoney, 192 AD2d 649 [1993], lv denied 82 NY2d 656 [1993] [reassignment from deputy sheriff sergeant investigator to deputy sheriff sergeant was within the sheriffs discretion]; see generally Matter of Gibbone v Fire Dept, of City of N.Y., 123 AD2d 693, 694 [1986] [reassignment to accounting position with different duties in fire department not improper]; Garelick v Dowling, 59 AD2d 733 [1977] [lateral reassignment at Department of Health sustained]).
In contrast, lateral reassignments that involved a demotion in grade, title and loss of salary and benefits have been construed to involve discipline and warrant protective procedures (Matter of Bailey v Susquehanna Val. Cent. School Dist. Bd. of Educ., 276 AD2d 963 [2000] [transfer of school bus driver from assigned driver to unassigned driver involved diminution in benefits and constituted discipline]; Matter of Campbell v New York City Tr. Auth., 253 AD2d 813, 814-815 [1998], lv denied 93 NY2d 805 [1999] [transfer from supervisor level II to supervisor level I at Transit Authority including suspension and reprimand found to be disciplinary action]; Matter of Borrell v County of Genesee, 73 AD2d 386, 391 [1980] [reassignment from investigator to deputy sheriff-jail carried with it reduction in pay and loss of certain benefits and constituted disciplinary action]).
Education Law § 1711 (2) provides in relevant part that the superintendent of a school district “shall possess . . . the following powers and be charged with the following duties: ...(e) ... to transfer teachers from one school to another, or from one grade of the course of study to another grade in such course.”
Education Law § 1709 provides that the Board of Education “shall have power, and it shall be its duty: . . . (33) To have in *326 all respects the superintendence, management and control of the educational affairs of the district, and, therefore, shall have all the powers reasonably necessary to exercise powers granted expressly or by implication and to discharge duties imposed expressly or by implication by this chapter or other statutes.”
Here, petitioners’ salary, benefits and terms of employment have not been affected by the reassignment.
Respondent insists that the reassigned duties, namely, preparation and revision of curriculum within petitioners’ respective tenure areas of social studies and physical education in order to align the district’s curriculum with State Education Department standards, can only be performed by certified teachers and such duties are considered proper adjunct teaching responsibilities consistent with the dignity of the profession.
Petitioners’ transfer from the classroom in the respective fields of social studies and physical education to nonclassroom duties reasonably related to these same tenure areas is analogous to the types of transfers explicitly permitted by Education Law § 1711 (2) (e) and “by implication” included within respondent’s statutory powers pursuant to Education Law § 1709 (33).
Just as a teacher may be reassigned between schools and course grades without triggering the provisions of Education Law §§ 3020 and 3020-a and civil service employees may similarly be reassigned laterally without warranting a hearing, the reassignment of a teacher from classroom duties to a non-classroom does not necessarily constitute discipline within the meaning of Education Law § 3020.
The actions of respondent in reassigning petitioners does not constitute discipline within the meaning of Education Law § 3020 so as to require the filing of charges and right to hearing provided by Education Law § 3020-a and due process considerations.
Based on the foregoing, the petition is denied and this proceeding is dismissed.